## WINDSON P? SPINKS *v.* ABRAM W. DAVIS.

1. CONTRACTS: VOID WHEN AGAINST PUBLIC POLICY.—All contracts, the direct tendency of which, is to induce fraud and malpractice upon the rights of others, or the violation or neglect of one of two high public duties, the faithful discharge of which is inconsistent, are against public policy and void.

2. SAME: ATTORNEY AND ADMINISTRATOR: INCONSISTENT OBLIGATIONS VOID.—It is the duty of an attorney entrusted with the collection of a debt to enforce its collection if it can be done by legal means; on the other hand it is the duty of an administrator to scrutinize rigidly every claim presented against the estate, and to resist its collection by interposing every legal defence which may exist against it; and hence, the two characters impose inconsistent obligations which ought not to be united in the same person; a contract therefore by which an attorney takes a claim against an intestate for collection, and to that end, agrees to administer on the estate, is void as against public policy; and no action can be maintained against him for his failure to collect the debt.

IN error from the Circuit Court of Tallahatchie county. Hon. W. L. Harris, judge.

*W. B. Helm,* for plaintiff in error.

This was a suit brought by W. P. Spinks against A. W. Davis, upon an agreement entered into between Spinks and Davis, whereby Davis for a consideration, undertakes as attorney, to assume the

administration of a certain estate, and collect a debt due to Spinks. The defendant demurs and sets forth several causes, the principal of which is, that the agreement is illegal, contrary to public policy and therefore void; in support of which position, a number of cases are cited, none of which I think are in point. The case cited from 4 Wash. C. C. R. 279, differs very widely from the one at bar; in that case absolute fraud and corruption was charged, the others are of similar character. I cannot see how the agreement is contrary to public policy. It is clear that a person, when he is immediately interested, or a creditor, can take out letters of administration, but it is equally clear, that what he is authorized to do himself, he may authorize another to do for him. *Qui facit per alium, facit per se.*

The position of the attorney is not more inconsistent than would be the position of the principal, they are identically the same. See Hutch. Code, 665, § 54.

*Daniel Mayes,* for defendant in error.

The agreement, as set forth by the plaintiff, is contrary to public policy, and void. It is the duty of an administrator to defend the estate against all unjust demands. It is inconsistent with this duty that he becomes the attorney of a creditor to prosecute a particular claim against the estate. He should be indifferent between the creditors, or persons claiming so to be, and the distributees; and any contract which militates with this indifference, is against public policy. The principle is applied to many cases which, though not the same in fact, serve to show that this case is within it. See *Toler* v. *Armstrong,* 4 Wash. C. C. 297; 11 Wheat. 258; *Jones* v. *Carwell,* 3 John. Cases, 29; *Thompson* v. *Davies,* 13 Johns. R. 112; *Doolin* v. *Ward,* 6 Johns. R. 194; *Bridgewater* v. *Brookfield,* 3 Cow. 299; *Hodson* v. *Wilkins,* 7 Greenl. 113; *Ayer* v. *Hutchins,* 4 Mass. 370; 5 Ib. 541; *Scudder* v. *Andrews,* 1 M'Lean, 464; *Merrell* v. *Legrand,* 1 How. (Mis.) 150; *Clippinger* v. *Hepbaugh,* 5 Watts & Serg. 315; *Fuller* v. *Dame,* 18 Pick. 472.

HANDY, J., delivered the opinion of the court.

The declaration in this case states in substance, that the plaintiff contracted with and retained the defendant as an attorney-at-law, to collect certain claims to a large amount, due him from the estate of one John Carson, deceased, who resided in Alabama, and died insolvent, but was entitled to a distributive share of the estate of his father William Carson, who had previously died in Tallahatchie county, in this State; that the said estate having been fully administered and distribution made, and no distributive share set apart or allowed to John Carson, and the plaintiff being advised, that in order to reach John's interest in his father's estate, it would be necessary to take out letters of administration of John's estate and proceed against the administrators of the father's estate, contracted with and retained the defendant as an attorney, to take out letters of administration upon John's estate, and to collect his debt, for certain reasonable fees and reward to be paid to him; that the defendant accordingly took out letters of administration in the Tallahatchie Probate Court, at June term, 1856, and in conjunction with other counsel retained with the defendant, the defendant as such administrator, filed a bill in chancery against the distributees of William Carson's estate, and obtained a decree in his favor at October term, 1850, from which an appeal was taken by the adverse parties, to this court; that pending that appeal, the defendant, without notice to the plaintiff or his associate attorney, fraudulently stated to this court, that the suit was commenced and prosecuted without his knowledge or consent, whereupon this court, considering that admission as a confession of errors, and without examining the merits of the case, reversed the decree; and the same statement being afterwards made to the Chancery Court, the bill was finally dismissed by that court, at April term, 1853. The declaration avers, that the plaintiff's debt could have been collected, but that it was prevented by the fraudulent conduct of the defendant; wherefore, he prays judgment against the defendant in his individual capacity for his debt, &c.

The defendant demurred to this declaration upon many grounds, and judgment was rendered thereupon for the defendant; and for this alleged error, the case is brought here.

We will proceed to consider the correctness of the judgment upon the most essential point of the demurrer.

The first objection to the declaration is, that the contract set up is contrary to public policy, and, therefore, illegal and void.

This agreement as stated is, in substance, that the defendant who was thus retained as the attorney of the plaintiff, to collect his debt, for compensation, should also become administrator of the debtor's estate, and thereby accomplish the object of his original engagement and collect the debt. The question is, do not these respective duties involve incompatible obligations, or, does not the faithful performance of one of them tend necessarily to the violation of the other?

It was the duty of the attorney diligently to prosecute the claim according to law, and to collect it if it could be done by legal means. It was the duty of the administrator to scrutinize the claim rigidly, and to refuse payment if there was any doubt about its justness in fact, or its validity according to strict legal rules; to defend, upon the ground of the Statute of Limitations, the illegality or want of consideration of the claim, or any other bar which was a sufficient defence to it in law. And all such defences, it was the plain duty of the attorney to resist. In short, the attorney was bound to protect the interest of his client, and the administrator was primarily bound to protect the legal interests of the estate. Under such circumstances, the attorney could not have performed his duty to prosecute the claim, if its validity had been doubtful, consistently with his duty to defend the estate against its collection. Hence, a strong temptation would necessarily arise to violate his duty in the latter capacity, and to pay the claim; because the attorney would thereby make a profit by his retainer in addition to the commission which he would at all events receive as administrator; and instead of acting as a faithful and impartial administrator, he stands under a strong temptation to abuse his trust to his own private gain. If the claim should be of such doubtful validity as to make it the duty of the administrator to resist its payment and to render a suit necessary, what is his attitude? He must either become the plaintiff's attorney in the suit against himself as administrator, or he must procure some

one else to bring the suit against him.    In this, there would be an almost irresistible inducement to malpractice and collusion; for, considering the infirmities of human nature, it is scarcely to be supposed, that he would make a very vigorous defence to a suit in which he was directly interested that the plaintiff should recover.

But in this case, the main object of the arrangement was the collection of the plaintiff's claim, and to that the defendant was primarily bound by his agreement.    The administration was to be undertaken merely as a means to that end.    How, then, could the attorney properly perform his contract to collect the plaintiff's claim, when it might become his duty as administrator to resist it? Either by the force of his contract, and in furtherance of the object of the undertaking, or by the temptation to do wrong which his situation would render almost irresistible, he must act as administrator so as to facilitate the end for which the whole arrangement was entered into, and thereby violate his duty in that capacity.

The obligations are, therefore, manifestly inconsistent, and are calculated to induce a violation of one of two high public duties; and the agreement must therefore be condemned as illegal and against public policy, so far as it charged the attorney, upon his individual undertaking, to collect the claim by means of the administration.

It is no answer to this view of the case to say, that the defendant might properly have performed his duty generally, as administrator, as well to others interested as to the plaintiff, and yet have properly paid the claim of the plaintiff; and that it is to be presumed that the arrangement was intended to be carried out by legal means, and not by those which were illegal.    It is a sufficient objection to a contract, on the ground of public policy, that it has a direct tendency to induce fraud and malpractice upon the rights of others, or the violation or neglect of high public duties. Upon this principle, contracts to procure the making of a will in favor of a particular party, or to bring about a marriage between certain parties, and the like, are held to be illegal as being against public policy.    For although the act contracted to be done may be just and beneficial as between the parties immediately concerned

in it, and though it be accomplished in good faith and without undue means, yet the contract to procure it to be done is held to be against public policy, because its natural effect is to cause the party to abuse the confidence placed in him by those upon whom the influence is to be exerted, and thereby prejudicially to affect the rights of others. *Fuller* v. *Dame*, 18 Pick. 472; *Collins* v. *Blantern*, 2 Wilson, 347; 1 Story, Eq. §§ 265, 266; Chitty on Contracts, 525, 526; 1 Lead. Cases in Eq. 150-169, and cases there cited.

It is urged, in support of this action, that by our laws a creditor has the right to take out letters of administration upon his debtor's estate, if parties having the prior right fail to do so; and that there can be no impropriety in the attorney's doing that which his client, who had the same temptation to do wrong as the attorney, is allowed to do.

But the question is, not whether the attorney had the right to administer, but whether a contract by which he was either bound, or under a strong and direct temptation, to use his trust for the purpose of paying the claim of the plaintiff, is proper and legal. The creditor-administrator, is under no contract to induce him to abuse his trust; and being known as a creditor, his acts will, in all probability, be closely examined by those interested in the estate. But the attorney appears as a disinterested person, in whom the parties may confide for the faithful performance of all his duties, and especially for the protection of the rights and interests of the estate. He is supposed not to be acting in his own right, but for the benefit of others, and impartially; and from the confidence that may well be presumed to be reposed in him, he will have much greater power to make underhand arrangements than would the creditor himself, who was known to be acting mainly for his personal interest. The policy of the statute allowing a creditor to administer upon his debtor's estate, proceeds on .the ground of enabling the creditor to collect his debt, and that from necessity, because no one else will administer. But it is not to be extended to justify agreements made by third persons who may become administrators, the performance of which will have a direct tendency to cause malpractice and fraud in the administration.

Nor is this agreement of the same character as a contract to indemnify a party for becoming administrator of an estate. In such a case, the administrator is bound to do nothing which at all conflicts with his duty as such. He undertakes the trust for no ulterior collateral purpose, and the object is merely to have the estate administered in due course of law. The indemnity or compensation is only to induce him to take upon himself the trust to be performed according to law, and there is no continuing inducement to malpractice after the trust is undertaken.

If these views of the case be correct, it follows that however the conduct of the defendant, as stated in the declaration, may be condemned in point of morals, or whether he be liable or not for his fraudulent conduct as administrator, no action against him individually can be maintained upon the agreement made by him; and the judgment sustaining the demurrer must be affirmed.