### EISEMANN v. HAZARD.

(Supreme Court, Appellate Division, First Department. March 13, 1914.)

1. ATTORNEY AND CLIENT (§ 130*)—COMPENSATION—RIGHT TO COMPENSATION.

Defendant retained plaintiff, an attorney, to protect her interests in a firm which was financially embarrassed. Plaintiff, who was also attorney for creditors of the firm, filed an involuntary petition in bankruptcy against the firm, and as representative of the creditors effected an advantageous composition; at the same time compelling others in the firm to give defendant control of the new corporation which was to succeed the firm by threatening to prevent the composition if they did not accede to his demands. *Held*, that plaintiff cannot recover compensation for services rendered under such circumstances, for an attorney may not represent adverse interests or undertake to discharge conflicting duties.

[Ed. Note.—For other cases, see Attorney and Client, Cent. Dig. §§ 292, 293; Dec. Dig. § 130.*]

---

2. **ATTORNEY AND CLIENT (§ 130\*)—COMPENSATION—RIGHT TO.**
    The fact that plaintiff disclosed to his associate members of the committee of creditors, who determined on the composition, that he was representing defendant, will not entitle him to compensation; the disclosure not being to all of the creditors, and the law not allowing an attorney to act in any capacity inconsistent with his office.

    [Ed. Note.—For other cases, see Attorney and Client, Cent. Dig. §§ 292, 293; Dec. Dig. § 130.\*]

3. **ATTORNEY AND CLIENT (§ 165\*)—DEFENSES—NECESSITY OF PLEADING.**
    It is unnecessary for one sued for an attorney's fee to set up the illegality of the attorney's action in representing conflicting interests, where the facts appear from the testimony given in support of the attorney's case.

    [Ed. Note.—For other cases, see Attorney and Client, Cent. Dig. §§ 365–367; Dec. Dig. § 165.\*]

Appeal from Trial Term, New York County.

Action by Frederick F. Eisemann against Florence A. Hazard. From a judgment for plaintiff and an order denying her motion for new trial, defendant appeals. Reversed, and complaint dismissed.

See, also, 144 N. Y. Supp. 1114.

Argued before INGRAHAM, P. J., and McLAUGHLIN, LAUGHLIN, DOWLING, and HOTCHKISS, JJ.

James A. Gray, of New York City, for appellant.
Jerome Eisner, of New York City, for respondent.

HOTCHKISS, J. The plaintiff, an attorney at law, brought this action to recover a balance alleged to be due him for legal services. The answer was a general denial. The defendant is the widow of one Hazard, who, at the time of his death, was a partner and apparently the holder of the major interest in the firm of E. C. Hazard & Co. of this city, to which interest defendant has apparently succeeded on the death of her husband. Some time in August, 1907, the defendant retained plaintiff to represent her interests in the firm, which had become embarrassed and the affairs of which were then in a precarious state; the creditors numbering about 500. After examining with some particularity into its affairs, plaintiff advised that he should be permitted to put the firm into bankruptcy with a view to effecting a settlement with its creditors on a basis which would save sufficient of its assets to permit the business to be continued, and with the understanding that, incidentally, in the course of the proceedings, plaintiff would endeavor to compel the active partners in the firm to relinquish to defendant sufficient of their interest in the business to restore to defendant shares or interests which she claimed these partners had unjustly obtained from her after the death of her husband. Having secured the consent of firm creditors to the necessary number and amount, all or a majority of whom were clients of the plaintiff, an involuntary petition in bankruptcy was filed against the firm and a receiver of its property was appointed. Shortly thereafter, the plaintiff caused a meeting of creditors to be called for the purpose of securing a composition, at which meeting, at plaintiff's

---

\*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

suggestion, a committee of creditors was appointed to investigate and advise the general body of creditors with respect to the proposed composition, to which committee plaintiff was added· as a member. At its first meeting plaintiff informed this committee that he was the attorney for this defendant Mrs. Hazard, and at the same time he explained the reasons for and urged upon the committee the desirability of a composition which "would be sufficiently small" to leave the firm adequate capital with which to continue business. Opposition to this plan was at once developed; several of the committee being in favor of closing the business out in the regular course of bankruptcy. There were a number of conferences among the creditors at which plaintiff represented, "for the purpose of the argument," William Lanahan & Son, regular clients of plaintiff, large creditors of the bankrupt firm, one of the petitioning creditors, and the consent of whom to the proposed composition was important. This consent plaintiff informed the committee would be given to a composition on the basis of 60 cents, of which 10 cents should be paid in cash and a like amount every two months thereafter, the same to be represented by five notes of a new corporation to be formed to take over the business. The consent of a substantial number of creditors having been secured to this composition, plaintiff prepared for the committee a written report recommending ·the same, which they signed, and plaintiff proceeded to secure the necessary consents of other creditors. To this end, plaintiff at one time called a meeting which was attended by many of the creditors, and to these he submitted the committee's report and strongly recommended its acceptance, and ultimately he succeeded in obtaining the consent of a sufficient number of creditors in value and in amount to make the composition effective. The plaintiff secured the consent of the partners of the bankrupt firm to a readjustment of interests so as to give the defendant control of the new corporation by threats that, unless they consented to such readjustment, he would advise the committee not to accept the composition, thus defeating the proposed reorganization. Having secured powers of attorney or similar authority from sufficient of the creditors, a creditors' meeting was held in the bankruptcy proceedings, at which meeting plaintiff elected himself trustee and as such, under orders of court, operated the business until the reorganization was completed and the business turned over to the new company.

In January, 1908, the plaintiff first took up with the defendant the matter of his compensation, and he then asked her how much of his bill she wished him "to charge against the partnership and [how much] against the bankruptcy proceedings," to which defendant answered: "Well, how much can I charge? How much are you going to charge me first?" To this plaintiff responded that he would charge $10,000 for all his services and would, if defendant wished, put the entire charge upon the bankrupt estate. It was finally arranged that plaintiff should receive from the estate of the bankrupts $3,000 for his services as trustee, and $500 for his services as attorney for the petitioning creditors, for which two amounts he agreed to give de-

fendant credit on account of his proposed fee of $10,000 which she was to pay to him. Plaintiff subsequently induced the other partners of the bankrupt firm to consent that he should receive the foregoing $3,500 from the bankrupt estate, because, "of course, there was no way for them [to object]; Mrs. Hazard having control."

[1, 2] All of the foregoing appeared from the plaintiff's own testimony. It is unnecessary to comment on the ethics of plaintiff's conduct as thus disclosed, further than to say that it plainly appeared that plaintiff undertook to represent conflicting interests and that, while acting as attorney for this defendant, he used the opportunities afforded as a member of the committee of creditors, aided by his apparent ability to control or favorably influence important creditors, who were among his general clients and who apparently served as decoys, to bring about a composition and settlement favorable to this defendant, his particular client, which settlement was the chief end and purpose of his retainer. The law will not assist him in recovering compensation for services rendered under such circumstances. It is an elementary proposition, founded on one of the oldest and soundest maxims of good morals, that an attorney may not represent adverse interests or undertake to discharge conflicting duties, and that, if he does so, he cannot receive compensation from either party. The rule is designed not only to prevent dishonest practitioners from fraudulent conduct, "but as well to preclude the honest practitioner from putting himself in a position where he may be required to choose between conflicting duties, or be led to an attempt to reconcile conflicting interests rather than to enforce to their full extent the rights of the interest which he should alone represent." Strong v. International B. L. & I. Union, 82 Ill. App. 426. It is of no importance that the plaintiff informed his associate members of the committee of creditors that he represented this defendant. There is nothing to show that any such disclosure was made to any of the numerous creditors other than those who were members of the committee. But even if such disclosure had been made, the situation would not be changed, because the matter is not one wholly within the control of the parties. For reasons of public policy, the courts will not allow an attorney to act in any capacity or assume any duty inconsistent with his office of attorney. Anonymous, 7 Mod. 47; Herrick v. Catley, 1 Daly, 512; White v. Haffaker, 27 Ill. 349; Spinks v. Davis, 32 Miss. 152.

[3] It is true that the original retainer under which plaintiff was employed did not necessarily involve services of an illegal nature; but, to accomplish the purposes of his retainer and to secure a reorganization of the business and the control thereof by defendant, the plaintiff voluntarily assumed a position and rendered services materially affecting the success of the task he had undertaken and of a character which the court will not recognize as the basis of compensation. It was not necessary for the defendant to plead this defense, because the facts appeared from testimony given in support of plaintiff's case. Milbank v. Jones, 127 N. Y. 370, 28 N. E. 31, 24 Am.

St. Rep. 454; Drake v. Lauer, 93 App. Div. 86, 86 N. Y. Supp. 986, affirmed 182 N. Y. 533, 75 N. E. 1129.

The judgment should be reversed, and the complaint dismissed, with costs. All concur.

