KATHARINE DENISE L. DELAFIELD, Respondent, v. CECIL BARRET and Others, Individually and as Partners Doing Business under the Firm Name and Style of SPENCER TRASK & COMPANY, Appellants, Respondents, Impleaded with MARIE S. LIVINGSTON, Respondent, Appellant.

MARIE JACQUELINE LIVINGSTON and Others, Infants, by THOMAS M. BRASSEL, Their Guardian ad Litem, Respondents, v. CECIL BARRET and Others, Individually and as Partners Doing Business under the Firm Name and Style of SPENCER TRASK & COMPANY, Appellants, Respondents, Impleaded with MARIE S. LIVINGSTON, Respondent, Appellant.

First Department, May 3, 1935.

*Lloyd Paul Stryker* of counsel, [*Harold Shapero* with him on the brief; *Lloyd Paul Stryker*, attorney], for the plaintiffs and the defendant, Marie S. Livingston.

*A. Donald MacKinnon* of counsel [*Milbank, Tweed, Hope & Webb*, attorneys], for the defendants Barret and others.

TOWNLEY, J.   The plaintiffs in these two actions are children of the defendant Marie S. Livingston.   Prior to September 23, 1925, the infant plaintiffs had inherited considerable property from their father which came under the control of the defendant Marie S. Livingston upon her appointment as their general guardian.   On September 23, 1925, Mrs. Livingston called on defendant Barret, one of the partners of Spencer Trask & Company, and requested his advice with respect to investments of her own funds and those of her children.   Barret told her that the only type of securities with which he was familiar were the common stocks of new enterprises financed from time to time by Spencer Trask & Company.   Mrs. Livingston told him that such purchases would be satisfactory to her as she desired to invest in securities which had chances of increasing in value rather than in those which would simply assure a steady income.   She also told him that she desired to invest the funds of her infant children in the same class of security.

Both Mrs. Livingston and Barret consulted counsel.   Both attorneys advised them that the investment of these funds in securities other than those permitted by the laws of the State of New York for investment by guardians would involve an assumption of risk on the part of Mrs. Livingston and also on the part of Spencer Trask & Company.   The attorneys also suggested that there would be practical difficulties connected with the proposed investments.   The defendants' attention was called to the fact that if a surety bond was given by Mrs. Livingston as guardian the surety company would exercise supervision and would not approve

of investments of a speculative character. They were also advised of the necessity of the guardian filing an annual inventory in the Surrogate's Court and the possibility of criticism being made of the investments shown by such inventory.

Mrs. Livingston's attorney, Mr. Brinckerhoff, on September 23, 1925, wrote Barret saying: "I have advised Mrs. Livingston that if she had a surety company on her bond as such guardian, it would not be possible for her to invest in securities, other than those permitted by the laws of the State of New York for investment by guardians. Arrangements have been made whereby Mrs. Livingston's bond will be given by individuals, and I do not apprehend any supervision on their part of the investments she may choose to make as such guardian. I have told her that if she cared to assume the responsibility, she would probably have more freedom of investment under these conditions than she could otherwise.

" I have also informed Mrs. Livingston that it would be necessary to file an annual inventory and report to the Surrogate of New York County which would show the investments and the income received from them, and that if the Surrogate did not approve of any investments which were made, other than those allowed by the laws of the State of New York, it is possible that she may be compelled to change them and to comply with the requirements for investments by guardians."

Barret then wrote Mrs. Livingston on September 24, 1925, as follows: " As regards the Power of Attorney which you have given me, I have showed this to Mr. Beverly Robinson and he says that in his opinion it is entirely sufficient and satisfactory to carry out your wishes and my ideas in the matter of handling your account.

" As regards the children's accounts, Mr. Robinson agrees with Mr. Brinckerhoff as to the State law and the steps which you have taken to make such investments as we desire for them. Mr. Brinckerhoff has no doubt told you that there is some liability connected with doing this, which you are ready to assume, and which I will be also, if it would only concern us, but in the event of the death of either one of us, as you know, other factors would be brought in, and he has therefore suggested that you should write me a letter absolving me of any such liability. On the receipt of this it seems to me all the safeguards will have been taken so that we can proceed exactly as you desire."

On the same day Mrs. Livingston then sent the agreement in suit, which reads as follows: " It is my intention to place in your hands certain funds to invest for me as General Guardian of my children, and in making these investments, I wish to give you the widest possible scope. Whatever investments you may make in

future will be satisfactory to me as General Guardian, and I hereby agree that I will hold you harmless and will indemnify you for any claims which may be made against you or your firm for investing the funds of my children in securities other than those which a guardian is permitted to invest in under the laws of this State."

Thus, with full knowledge that the investment in speculative securities of the character indicated was not authorized by the statutes regulating the investment of infants' funds, an account was opened and securities were bought and sold with the infants' funds for a period of about eight years.

At the time the plaintiff Katharine Delafield was approaching majority Mrs. Livingston complained of the manner in which her account and the accounts of her children had been handled. An action was brought by Mrs. Livingston on her own behalf for an accounting. She charged that Spencer Trask & Company, while acting as her discretionary agents, had sold her their own securities at a profit. The judgment in her favor in that action has been affirmed by this court in a decision handed down April 12, 1935 (*Livingston* v. *Barret*, 244 App. Div. 707).

The present actions were brought by a guardian *ad litem* appointed for the infant plaintiffs to recover from Mrs. Livingston and Spencer Trask & Company the funds of the plaintiffs invested by them in securities not authorized by law, but the guardian *ad litem* was discharged in the first above-entitled action. No argument is presented that plaintiffs are not entitled to recover from the defendants upon such claims and the judgments in favor of the plaintiffs should be affirmed.

The serious question upon this appeal relates to the right of the brokers to recover over against Mrs. Livingston on the indemnity agreement given to them at the time the accounts were opened. It is urged that no recovery may be had upon this agreement because it is void as against public policy. It is claimed that the statutes limiting investments by guardians (Dom. Rel. Law, § 85; Dec. Est. Law, § 111; Banking Law, § 239) are expressive of the public policy of the State and that no agreement deliberately entered into as a part of a transaction involving the investment of infants' funds in securities not authorized by the statute can be enforced.

We are convinced that this contention is well founded and must be sustained. The obvious purpose of the statute is to protect the property of infants from loss through investment in speculative securities. It would be difficult to imagine a more deliberate determination to violate the purpose of the statute than is presented by the transactions under consideration. There have been some cases involving unauthorized investments of trust funds by execu-

tors or trustees in which claims for contribution or indemnity have been sustained where the parties have acted in an innocent belief that authority for such investment existed. One of these decisions which is principally relied on by the defendants to sustain the enforcibility of this agreement is *Steele* v. *Leopold* (135 App. Div. 247). The decision in that case, however, proceeded upon the assumption that the brokers had acted throughout in an innocent belief that the executor whose orders they had obeyed had authority to make speculative investments on margin. In that connection, the court in its opinion (at p. 257) said: " The testator might lawfully authorize the investment of his property in a business enterprise (*Willis* v. *Sharp*, 113 N. Y. 586), and I know of no law prohibiting him from directing that his executors continue or open and conduct for a given time a speculative account for the benefit of his estate. The executor evidently supposed that he had such authority, for he did not attempt to gain any private advantage by the speculation. He did not convey trust funds to his individual use. He, in effect, represented to the appellants that as executor he was authorized to open the account. He and the brokers apparently acted openly and in good faith."

The situation involved in the present case is entirely different from that assumed as the basis for the court's decision in *Steele* v. *Leopold* (*supra*). In the present case the parties had throughout a conscious knowledge that they were acting without authority and in direct defiance of the statute.

In a similar case involving a right of one trustee to indemnity against his cotrustee (*Bahin* v. *Hughes*, 54 L. T. Rep. [N. S.] 188, 191) FRY, L. J., said: " Cases decided in favour of this principle would act as an opiate upon the consciences of persons who are co-trustees, and, instead of the *cestui que* trust having the benefit, each trustee would be looking to the other or others for a right of indemnity, and so neglect the performance of his duties; and the general indication of the principle of such a right of indemnity would be against the policy of the court in enforcing the trusts."

To allow the enforcement of an agreement such as is involved here would put a premium upon unauthorized investments by brokers who might encourage and carry out such transactions without any personal responsibility by resorting to the simple device of exacting an indemnity agreement from their clients. The agreement in suit was a direct inducement of the speculative transactions carried on with the funds of these infants. Its purpose is in direct conflict with the public policy of the State as expressed in the statute regulating the investment of infants' funds and as such is unenforcible.

The judgments in so far as they direct a recovery on the indemnity agreement in favor of Spencer Trask & Company against Marie S. Livingston should be reversed, with costs, and judgment should be directed on the cross-claim in favor of Marie S. Livingston, and in other respects the judgments should be affirmed, with costs to the plaintiffs against defendants Barret and others. One bill of costs only should be granted.

MARTIN, P. J., McAVOY, O'MALLEY and GLENNON, JJ., concur.

In each case: Judgment in so far as it directs a recovery on the indemnity agreement in favor of Spencer Trask & Company against Marie S. Livingston reversed, with costs, and judgment directed on the cross-claim in favor of Marie S. Livingston, and in other respects judgment affirmed, with costs to the plaintiffs against the defendants Cecil Barret and others. Settle order on notice reversing findings inconsistent with this determination, and containing such new findings of fact proved upon the trial as are necessary to sustain the judgment hereby awarded. [Court gave one bill of costs only.]