Argued June 14, reversed August 10, 1960

# OHIO CASUALTY INSURANCE COMPANY *v.* MALLISON ET UX

354 P. 2d 800

*Graham Walker,* Portland, argued the cause and submitted briefs for appellants.

*John C. Beatty,* argued the cause for respondent. On the brief were Dusenbery, Martin, Schwab, Beatty & Parks, Portland.

Before McAllister, Chief Justice, and Perry, Sloan, O'Connell and Millard, Justices.

O'CONNELL, J.

This action was brought to enforce an indemnity agreement contained in a so-called parent-minor re-

lease by the terms of which the defendants, in consideration of the payment to them of a certain sum, agree to save harmless the tort-feasor, Wayne L. Pomeroy and the plaintiff insurance company from all claims for injuries to Anita Mallison, the minor child of the defendants, arising out of an automobile accident. The case was tried on stipulated facts.

The injuries occurred when an automobile driven by Wayne Pomeroy collided with an automobile in which Dorthie Mallison, one of the defendants, was a passenger. At that time Dorthie was pregnant with Anita Mallison, the injuries to the latter occurring en ventre sa mere. Anita was born ten days after the accident. About ten months after Anita was born the defendants executed an instrument designated in one part as a "Minor's Release" purporting to be a release by Anita of all claims "accrued or which may accrue" as a result of the accident in question, and designated in another part as a "Release by Parents and Guardians" purporting to be a release and an indemnity agreement by the defendants individually and as parents and guardians of Anita. The indemnity portion of the parent-minor release read as follows:

> "As a further consideration for the payment of said sum we do hereby agree to indemnify, protect, and save harmless the said party or parties hereby released, and all other persons, firms and corporations whomsoever from all judgments, costs and expenses whatsoever arising on account of any action, claim or demand by the said minor or by any person or persons acting for or on behalf of said minor by reason of the aforesaid injuries and/or damages. And for the purpose of better securing this agreement, and the payment by us of any judgment that may be recovered hereunder against us, we agree to and do hereby waive any rights, benefits and exemption laws in this State

or elsewhere. It is further understood and agreed that the payment of the above amount is not to be construed as an admission of liability, but is a compromise of a disputed claim."

Three other instruments of release were executed, one each by defendants Charles Mallison and Dorthie Mallison separately, and one by them jointly and as natural guardians of Anita. The total consideration recited and paid for all of the releases was $2,250, of which $250 was allocated to the parent-minor release and indemnity agreement.

Sometime after the foregoing instruments were executed, it was discovered that Anita suffered from a spastic condition described as a form of cerebral palsy. On December 3, 1953 Anita, through the defendant, Dorthie Mallison, brought an action against Wayne Pomeroy, the plaintiff's assured, to recover for such injuries. See *Mallison v. Pomeroy,* 205 Or 690, 291 P2d 225 (1955). In that action Anita recovered judgment in the amount of $3,500, together with $1,987.16 for attorneys fees and costs, making a total of $5,487.16. The plaintiff paid the judgment and, being subrogated to the rights of Pomeroy, thereupon brought the present action to recover upon the indemnity agreement. Plaintiff recovered a judgment for $5,487.16, together with costs and disbursements. Defendants appeal from this judgment.

The defendants' principal contention on appeal is that the indemnity agreement is void and unenforceable as a matter of public policy. The agreement, it is argued, has the tendency to place the parent in a position where his interest will conflict with that of his child and that, therefore, the agreement violates the principle that one who is a fiduciary for another

may not undertake an obligation inconsistent with his fiduciary duty.

■ It is clear that an agreement by a person standing in a position of trust which tends to encourage a breach of that trust is void as contrary to public policy. *Keady v. United Rys. Co.*, 57 Or 325, 100 P 658, 108 P 197 (1910); *Holladay v. Patterson*, 5 Or 177 (1874); 6 Corbin on Contracts, §§ 1456, 1457; 2 Restatement, Contracts, § 570; 6 Williston on Contracts (Rev ed), § 1737. There is a preliminary question in each case, however, as to whether the promisor owes the fiduciary duty to act with another's interest in mind and whether the agreement has the tendency to produce a breach of that duty.

■ On the first point it is argued by plaintiff that parent and child do not stand in fiduciary relationship to each other. Conceding that there may be circumstances in which a parent is not a fiduciary with respect to transactions involving his child's interest, we believe that the duty owed by a parent to a child of tender years to preserve and protect his interest in a matter such as we have before us in this case is of a fiducial character. Woerner, American Law of Guardianship 76 (1897). Cf., *Rowe v. Freeman*, 89 Or 428, 437, 172 P 508, 174 P 727 (1918). See also: *Brown v. Hilleary*, 133 Or 26, 286 P 593 (1930). Under these circumstances the parent "is under a duty to act for or give advice for the benefit of" his child. 4 Restatement, Torts, § 874. See also: *Patterson v. Getz*, 166 Or 245, 111 P2d 842 (1941); *Schweickhardt v. Chessen*, 329 Ill 637, 161 NE 118 (1928). A parent is the natural guardian of his child. *In re Hall*, 235 N C 697, 71 SE2d 140, 32 ALR2d 856 (1952); *Ferguson et al. v. Phoenix Mutual Life Ins. Co.*, 84 Vt 350, 79 A 997, 35 LRA NS 844 (1911); *Green v. Campbell*,

35 W Va 698, 14 SE 212, 29 Am St Rep 843 (1891). A guardian stands in a fiduciary relation to his ward. *Anacostia Bank v. United States Fidelity & Guaranty Co.,* 119 F2d 455, 134 ALR 995 (D C Cir 1941); *U. S. Fidelity Co. v. United States Nat. Bank,* 80 Or 361, 157 P 155, LRA1916E 610 (1916); *Richardson v. Passumpsic Sav. Bank,* 111 Vt 181, 13 A2d 184 (1940); 2 Restatement, Trusts, § 2, comment b. As parent-guardian he owes a duty to act for the benefit of his child. That duty is not fully discharged where the parent enters into a bargain which gives rise to conflicting interests. The conflict may arise at the time of settlement when the parent has the opportunity to receive a sum of money in his own right as a part of the settlement in consideration for which he agrees to indemnify the defendant, and it may arise later when it is found advisable that his child bring action against the defendant for injuries which had not been known at the settlement date. On either of these occasions there is a real danger that the child's interest will be put in jeopardy because of the parent's concern over his or her own economic interests. Certainly a parent who is called upon to decide whether his child should bring an action for injuries not known at the time of settlement is not likely to proceed with such an action in the face of knowledge that any recovery eventually will result in his own liability under an indemnity agreement. There will be cases, of course, where the parent, because of his financial irresponsibility, will not hesitate to press suit against the defendant, but this circumstance will not always, or perhaps even usually, be present and the rule must be laid down broadly to protect the child where protection is needed.

Looking at the matter from the standpoint of the child's, rather than the parent's, choice of action (if

the child has the capacity to make a choice) again we find policy considerations which are important. A child, realizing that his recovery from the defendant would ultimately call for the parent to indemnify the defendant, would not be likely to pursue his rights. The policy which discourages the bringing of actions by a child against the parent on the ground that family harmony may be jeopardized would apply as well where the parents' liability arises indirectly through the enforcement of an indemnity agreement. See, *Cowgill, Adm'r. v. Boock, Adm'r.*, 189 Or 282, 218 P2d 445, 19 ALR2d 405 (1950). We believe, therefore, that the agreement relied upon by plaintiff in the instant case violates public policy in the particulars just described.

However, the plaintiff argues that there are competing policy considerations which outweigh the need for protecting the child in this class of cases. It is pointed out that the settlement of automobile accident claims through the acceptance of the parents' indemnity agreement is sought only in those cases in which there appears to be no reason to suspect any further damage from the injury. Where there is prospect of such damage, a general guardianship is established and the release is executed by the guardian, presumably under the supervision of the court.

It is argued that the consequence of holding invalid the type of indemnity agreement considered here will be to force the settlement of hundreds of small claims for insignificant injuries into the courts where, through the guardian's release or through an adversary proceeding, the defendant and his insurer can obtain a valid settlement. This is significant, it is contended, because the settlement of claims forces upon our judicial machinery, already straining with its load, an additional burden which, in all but a few

exceptional cases, turns out to be unnecessary because in most cases no complications arise out of the injuries for which settlement is made.

It could be added at this point that the guardian authorized by such judicial proceedings to execute a valid release is, in most cases, the parent himself, and if a release is executed pursuant to judicial authority and is broad enough to cover complications arising out of then existing injuries, the release forecloses the child from a subsequent action against the releasee. In this respect the child is worse off than where, as here, the release does not bind him and he may recover for future complications arising from his injury.

■ The difference, however, between a release by a parent qua parent and by a parent qua guardian is that in the latter case the court has the opportunity to exercise surveillance over the settlement. Although it is true that some courts entertain release proceedings in a perfunctory way without inquiry concerning the details of settlement, there are many trial judges in this state who exercise a very careful surveillance over the settlement of the claim with genuine and careful solicitude for the child's interest. In our own appraisal of the question we must assume that all trial judges will discharge their judicial duties and that the child will receive the protection which judicial supervision in release proceedings is intended to afford. With such supervision, we may assume that neither the parent, the tort-feasor nor the insurer, will be permitted to interpose their private interests to the detriment of the child's legitimate claim.

■ Plaintiff calls attention to the fact that the settlement in this case was effected only after the advice of competent legal counsel. This we concede, but the validity of indemnity agreements of the type we are

considering here must be tested as a class by the considerations of policy alluded to above and not by the protection the child may perchance receive in a particular case. See, *Pyle v. Kernan,* 148 Or 666, 36 P2d 580 (1934).

■ One further factor of policy must be cast in the scale. As plaintiff points out, the right to enter into a binding contract is a part of a citizen's liberty. *Baltimore & Ohio Southwestern Ry. Co. v. Voigt,* 176 US 498, 20 SC 385, 44 L Ed 560 (1899). It is the function of the courts to preserve this element of liberty unless the public welfare is affected. *Baltimore & Ohio Southwestern Ry. Co. v. Voigt,* supra; *Patterson v. Chambers Power Co.,* 81 Or 328, 334, 159 P 568 (1916); *Cone v. Gilmore,* 79 Or 349, 155 P 192 (1916). As stated in *Fidelity & Deposit Co. v. Moore,* 3 F2d 652, 653 (D.C. Or 1925):

> "* * * The courts always proceed with caution when invoked to declare a contract void on the ground of public policy, and will not do so unless such purpose is manifest. It is presumed that parties intend legal contracts, and contemplate no violation of the law, where the subject-matter thereof is not forbidden by law or the declared policy of the state. The power of courts to declare a contract void because of contravention of public policy is a very delicate and undefined power, and, like the power to declare a statute unconstitutional, should be exercised only in cases free from doubt."

After a careful consideration of all of the interests and factors involved, including the need for a simple and effective extra-judicial method of settling automobile accident claims, we have concluded that public policy strongly demands that the type of indemnity agreement executed in this case be held invalid.

Our conclusion may prompt insurance carriers to insist upon judicially approved releases on behalf of minors, and to the extent that such practice is followed in the type of case previously settled out of court the judicial machinery will be forced to carry a heavier burden. We believe that it is a burden worth the effort of bearing. We realize that as a consequence of our decision the prompt settlement of automobile accident claims may be impeded. Against this delay and consequent inconvenience to the tort-feasor, his insurance carrier and the parent, must be weighed the interest of the child.

A common criticism of the present practice of negotiating settlements is that the person with whom settlement is sought is at a disadvantage because usually he does not know his legal rights, whereas those representing the tort-feasor usually are acquainted with the law in such cases. Note: Releases: Partial Release of Tort Claims: Need for Legislation, 32 Calif L Rev 101 (1944). The criticism has additional force where the person whose claim is being settled is a minor who has no voice in the proceedings which purport to foreclose his rights.

The rule we announce here may adversely affect insurance carriers which have dealt in the past upon the assumption that a parent's indemnity promise was binding. It must be borne in mind that the liability which the indemnity agreement attempts to shift to the parent is one which the insurance carrier bargained to cover and for which it received a premium. The payment made to the parent in settlement may, in part at least, be for the release of the parent's claim for the injury to his child. *Whang v. Hong,* 206 Or 125, 290 P2d 185, 291 P2d 720 (1955); *Schleiger v. Northern Terminal Co.,* 43 Or 4, 72 P 324 (1903);

*Putnam v. Southern Pacific Co.,* 21 Or 230, 27 P 1033
(1891); ORS 30.010. Only to the extent that the pay-
ment made to the parent was in consideration for the
parent's promise of indemnity has the payor suffered
a loss.

In future settlements no hardship can result from
the rule we adopt here because, if adequate release pro-
cedures are adopted, the payment made in the settle-
ment of a claim will discharge the tort-feasor and his
insurer, and we may assume that the latter's premiums
will be adjusted to cover its costs.

There is surprisingly little authority on the ques-
tion of the validity of the type of indemnity agreement
involved in the case at bar. A diligent search by both
counsel and this court has revealed but one case in
point, and that by an intermediate appellate court.
In *Loesch v. Vassiliades,* 17 N J Super 306, 309, 86
A2d 14, 15 (1951) it was held that an indemnity agree-
ment executed by a parent in connection with his
daughter's claim for personal injuries was void on the
ground that it was against public policy. After stat-
ing the rule that a parent has no authority to com-
promise or release claims belonging to his child unless
authority to do so is judicially granted, the court said:

> "* * * When the father signed the release,
> he acted as though he were a judicially appointed
> guardian of his infant daughter. Such a guardian
> owes a duty to his ward to recover to the fullest
> extent for any legal claim she may have, by prose-
> cution if necessary, and to settle such claim only
> upon judicial approval. He is not permitted to
> place himself in a position where it would be for
> his benefit to violate his duty to his ward. 2 Scott
> on Trusts, § 170 (1939)."

The court went on to explain the parent's duty to his

child and the conflict between the parent's and child's interest created by the agreement:

"* * * As a practical matter, the parent has almost complete control, during the minority of the child, in determining whether or not a claim on behalf of his infant child shall be advanced. The parent, as natural guardian, owes the child a duty of protection and guidance. There is at least a moral duty on the part of the parent to see to it that the child's property rights are fully protected. * * * If such an [indemnity] agreement could be enforced, it would be for the benefit of the father to prevent the bringing of any suit on the claim of the infant, no matter how advantageous such suit might be for the infant. Therefore, the insurance company induced him to enter into a contract in which his personal interest came, or might come, into conflict with his duty to his daughter. It is clearly void as against public policy because it is an agreement, the object or necessary tendency of which is to place a person owing a duty to a third person, in a position where he is under obligations inconsistent with such duties. Such an agreement is void, even though in fact it has no such bad effect. 12 Am. Jur., Contracts, § 179; cf. Restatement, Contracts, § 570 (1932); 6 Williston on Contracts, § 1750 (1938)." 17 N J Super at page 310.

The foregoing expression by the New Jersey Superior Court expresses our view of the matter. See also generally 2 Restatement, Contracts, § 570; 6 Corbin on Contracts, §§ 1455-1457; 6 Williston on Contracts (Rev ed), § 1737.

In *Y. & M.V.R. Co. v. Whittington,* 191 Miss 776, 4 So2d 343 (1941), the duty of the parent to his child in the negotiation for the settlement of the child's claim is considered. In that case, after a daughter recovered judgment for personal injuries, her father,

in negotiations pending an appeal, agreed to accept a cash settlement less than the amount of the judgment; in consideration for which promise the defendant agreed to pay the father certain expenses incurred by him in connection with the prosecution of the daughter's suit. In an action brought by the father against the tort-feasor to recover the expense money agreed upon, the court held that the agreement was unenforceable. The court said:

> "* * * The appellee [father] attended this compromise conference manifestly in his daughter Mary's interest, and having assumed so to act, it became his duty throughout the conference to remain loyal to and serve only her. Instead of discharging this duty and remaining loyal to Mary, he transferred his allegiance, in part at least, to the railroad company for a consideration personal to himself, and at best attempted the impossible, i.e., to serve two masters with conflicting interests. This contract is therefore within the category of such as impair or tend to impair the fidelity of a party thereto to a third person with whom his relations are of a fiduciary or confidential character. Such contracts are illegal and will not be enforced by the courts. This is such an elementary rule of law as not to require authority to support it, but if such be desired, it will be found in Spinks v. Davis, 32 Miss. 152; 2 Rest. Cont., § 570; 17 C.J.S., Contracts, § 198; 12 Am. Jur. Contracts, § 179; 6 Williston on Contracts, Rev. Ed., § 1737." 4 So2d at pp 343, 344.

Plaintiff relies upon two cases in support of its contention that the indemnity agreement is valid: *Delafield v. Barrett et al.*, 270 NY 43, 200 NE 67, 103 ALR 941 (1936), and *In re Wohl's Estate*, 36 NYS2d 931 (1942). In the Delafield case a mother, who was the regularly appointed guardian for the estate of her two

daughters, invested the wards' funds in securities not authorized by statute for trust investments. The broker elicited from the mother an agreement that she would hold harmless the broker from any liability to the wards for improperly investing the funds. In the appellate division (245 App Div 33, 279 NYS 445) it was held that the indemnity agreement was void on the ground that it violated public policy in that the agreement called for an investment not authorized by the statute designed "to protect the property of infants from loss through investments in speculative securities." 279 NYS at page 449. On appeal to the New York Court of Appeals it was held, with one dissent, that the indemnity agreement did not violate public policy. The court held that the investment statute was not mandatory and, therefore, the purchase of the securities, although improper as a trust investment, did not subject the guardian to a statutory penalty. Since the indemnity agreement was not entered into in contemplation of the violation of any statute, and since the agreement did not call for the commission of a tort or crime, the court felt that public policy was not violated. The dissent agreed with the view taken by the Appellate Division.

*In re Wohl's Estate,* supra, involved similar facts and reached the same conclusion regarding the Delafield case as conclusive on the question of the validity of the indemnity agreement. It is to be noted that in neither of the foregoing cases did the court address its attention to the question of public policy which we deem controlling. In those cases the policy against inviting or encouraging the violation of a statute or the commission of a crime or tort was deemed to be the controlling consideration. In neither case did the court consider the policy involved when a fiduciary

purports to bind himself in such a way that his interest in protecting himself from liability under an indemnity agreement may clash with his duty to recoup a loss suffered by his ward. We believe that in overlooking this aspect of the problem the court, in each case, was in error and that the agreements should have been held invalid. Cf., Note, Indemnification Against Liability for Participating in Non-Legal Investment of Trust Funds, 46 Yale L J 1085, 1089 (1937).

The case at bar presents even stronger reasons for invalidating the agreement. Unlike the Delafield and Wohl's Estate cases, here we have a situation where the indemnitor receives a sum of money for entering into the agreement, and his interest in personal gain at the settlement table may well influence him to sacrifice the best interests of his child.

It is our conclusion that the agreement sued upon in this case must be held void as contrary to public policy. Therefore, the judgment of the lower court must be reversed.

Reversed.