KATHARINE D. L. DELAFIELD, Plaintiff, *v.* CECIL BARRET et al., Individually and as Partners under the Firm Name of SPENCER TRASK & COMPANY, Appellants, and MARIE S. LIVINGSTON, Respondent.

MARIE J. LIVINGSTON et al., Plaintiffs, *v.* CECIL BARRET et al., Individually and as Partners under the Firm Name of SPENCER TRASK & COMPANY, Appellants, and MARIE S. LIVINGSTON, Respondent.

44

(Argued October 24, 1935; decided January 28, 1936.)

*A. Donald MacKinnon* and *Egbert W. Doughty* for appellants. The agreement of indemnity is valid and enforceable. (Cons. Laws, ch. 13, § 111; Cons. Laws, ch. 41, § 21; Cons. Laws, ch. 14, § 85; *Matter of Adriance,* 145 Misc. Rep. 345; *Villard* v. *Villard,* 219 N. Y. 482; *Matter of Cady,* 211 App. Div. 373; *Clark* v. *Beers,* 61 Conn. 87; *Matter of Darlington,* 245 Penn. St. 212; *Steele* v. *Leopold,* 135 App. Div. 247; 201 N. Y. 518; *King* v. *Talbot,* 40 N. Y. 76.) The agreement of indemnity was valid and enforceable, not only as to losses on securities purchased in the general market, but also as to losses on securities owned by defendants Barret and others prior to the sale thereof to plaintiffs. (*Schofield* v. *Jackson,* 99 Conn. 515; *Trowbridge* v. *O'Neill,* 243 Mich. 84.)

*Lloyd Paul Stryker* and *Harold Shapero* for respondent. The statute limiting investments for guardians is based on sound public policy. (Cons. Laws, ch. 14, § 85; Cons. Laws, ch. 13, § 111; Cons. Laws, ch. 2, § 239; *Matter of*

*Vanderbilt,* 129 Misc. Rep. 605.) The indemnity agreement is contrary to public policy and is illegal and invalid. (*Bliss* v. *Matteson,* 52 Barb. 335.) The defendants acts were tortious. An agreement to indemnify them against the consequences of such acts is invalid. (*Reiner* v. *North American Newspaper Alliance,* 259 N. Y. 250.)

HUBBS, J. The respondent Marie S. Livingston was general guardian of her two minor daughters, the plaintiffs in this action. The appellants constituted the firm of Spencer Trask & Company, investment brokers. The respondent Marie S. Livingston called and requested the appellant Barret, a personal friend, to advise her with respect to investments for herself and her children. Barret informed her that his duties constituted investigating new business enterprises in need of financing; that this was the type of securities with which he was most familiar and qualified to advise her. She thereupon informed Barret that such investments would be satisfactory to her for the investment of her own funds and the funds of her children. Her own attorney advised her that the investment of the funds of her children in securities other than those specified by the laws of the State for investment by guardians would involve an assumption of risk on her part and on the part of appellants. Her attorney suggested to Barret and to the respondent Marie S. Livingston that it would be proper for her to indemnify appellants against any liability which appellants might incur as a result of making such investments. Barret informed her that appellants would not be willing to assist her in the investment of her children's funds in the manner requested unless she would agree to indemnify the firm against such liability. Pursuant to her instructions, her attorney prepared an indemnity agreement and she executed it and delivered it to appellants. The agreement was in the following form:

" It is my intention to place in your hands certain funds to invest for me as General Guardian of my chil-

dren, and in making these investments, I wish to give you the widest possible scope. Whatever investments you may make in future will be satisfactory to me as General Guardian, and I hereby agree that I will hold you harmless and will indemnify you for any claims which may be made against you or your firm for investing the funds of my children in securities other than those which a guardian is permitted to invest in under the laws of this State.

" Very truly yours,<br>" MARIE S. LIVINGSTON."

Thereafter, the appellants received various sums of money from the respondent Marie S. Livingston which moneys belonged to the plaintiffs herein and whose moneys it used in part in the purchase of securities not of the nature of those specified in section 111 of the Decedent Estate Law (Cons. Laws, ch. 13), made applicable to guardians by section 85 of the Domestic Relations Law (Cons. Laws, ch. 14), and in part in payment for securities of like nature not purchased by appellants, but issued by them in the course of the financing of business ventures. These transactions continued from on or about October 5, 1925, when letters of guardianship were issued to the respondent Marie S. Livingston, until in or about the month of June, 1929. During all this time the respondent Marie S. Livingston expressed no dissatisfaction with the manner in which her funds or the funds of her children had been handled and in fact no complaint was made until about June 5, 1932, when securities of all kinds had seriously declined in value and the investment business was in a chaotic condition.

There is no indication in the record in this case that the appellants made any misrepresentations to the plaintiffs or to the respondent Marie S. Livingston. It appears that the appellants acted in good faith toward the plaintiffs and the respondent Marie S. Livingston. The appel-

lants bought and sold securities for several years, rendering in the meantime statements which clearly indicated the nature of the securities sold to and bought for the accounts of these infants.

This action was instituted to recover the moneys of the infant plaintiffs paid to appellants and by them used in the purchase for or sale to the plaintiffs of securities not of the nature of those specified in the statutes referred to. On motion the respondent Marie S. Livingston was made a party to this action and judgment sought against her on the indemnity agreement. The Special Term decided in favor of the plaintiffs against appellants and in favor of the appellants as against Marie S. Livingston on the indemnity agreement. The Appellate Division affirmed the judgment in favor of the plaintiffs and reversed it in so far as it adjudged Marie S. Livingston liable on the indemnity agreement, on the ground that the agreement in question is void as against public policy.

The sole question involved on this appeal is whether the facts proven sustain the defense that the indemnity agreement is void and unenforceable. A decision by this court in her favor would result in permitting her to repudiate a contract entered into by her with full knowledge that it was being relied upon by the appellants, a contract prepared by her own attorney, the purpose and effect of which were clearly understood by her.

While the public policy of the State requires that persons who deal with the funds of infants and other funds held in a fiduciary capacity shall be held strictly accountable for the manner in which they deal with those funds to the extent that if they convert the same they shall be deemed guilty of larceny, Penal Law, sections 1290 and 1302, and if they invest those funds otherwise than in securities of the kind and nature specified in the Decedent Estate Law, section 111, and Personal Property Law, section 21, they shall be held responsible for any resultant loss, it does not necessarily

follow that such public policy requires the imposition of a penalty not within the contemplation of legislative enactments and entirely beyond the previous judicial decisions on the subject.

It must be borne in mind that although the Legislature has specified certain types of securities as proper for the investment of trust funds, and by so doing has afforded a measure of protection to fiduciaries, in that by investment in the permitted securities they presumptively, at least, are entitled to be relieved of that liability which the courts have sometimes imposed upon them where loss resulted from their management of the trust estate, it has not imposed or attempted to impose any liability, penal or civil, for the investment of such funds in securities not of the kind specified in the statutes. The liability which rests upon a fiduciary to reimburse the estate of a ward is one imposed by the courts and not by the Legislature. The statutes in question are not mandatory in form. Their purpose would seem to be to specify those types of investments which to the Legislature seem to afford a maximum of safety. The fiduciary who invests in securities within the specified classes is not by the statutes freed from liability for resultant losses if he fails to exercise reasonable judgment and discretion in making the investment. (See *Matter of Jacobs*, 152 Misc. Rep. 139.)

The effect of the statutes is not to excuse the fiduciary in case of loss where he invests in securities of the permitted classes without proper investigation and the exercise of reasonable care or to create a liability where liability would not exist in the absence of the statutes. The result of the investment of trust funds in securities not within the classes specified in the statutes is suggested in *Steele* v. *Leopold* (135 App. Div. 247, 257; modfd., 201 N. Y. 518) in the following language: " Such an appropriation of trust funds is regarded as a devastavit, and the funds are at once recoverable, but it does not follow that

the act is in all cases regarded as corrupt or so contrary to the rules of public policy that it must necessarily be considered tortious."

While public policy requires that trust estates be protected to the extent that where other than permitted investments are made, the estates shall be reimbursed in the event of loss, the enactment of the statutes in question does not so change the public policy of the State as to require the imposition of penalties not heretofore recognized as proper or necessitate a determination that acts which otherwise would not have been deemed tortious are of that nature. The primary duty of a guardian is to protect the estate of his ward and so manage it as to produce as large an income as is consistent with safety of investment. His action in investing in securities not specified in the statute, while not to be commended in view of the legislative stamp of approval placed upon securities of the enumerated classes, may not in fact be unwise or result in impairment of the safety of the fund. If he invests in securities other than those of the permitted class, he cannot set up the statute as supporting either his good judgment or his good faith. If loss results he must bear the loss. Where there is no fraud or unfair dealing, where he has acted in good faith, has exercised care and reasonable business judgment and it is apparent that his purpose was to further the interests of his ward, there should not be added to his civil liability for the loss the stigma of holding his action tortious, at least until such time as the Legislature shall have imposed penalties penal or civil for investing in securities of other than the permitted classes.

We feel that in the instant case no tort was involved in the action of the guardian or of the appellants in investing in the securities purchased by the appellants for the accounts of these infants. Likewise, no crime was involved. We reach the conclusion that the indemnity agreement was not based upon or a part of an illegal transaction and that the enforcement of that agreement is not against public policy. The statutes referred

to provide for indemnity agreements, and if the intent to deal in other than permitted securities were known to an indemnitor, it is questionable if the authorization to take indemnity would be held to be so limited as to exclude liability on the ground of illegality of the investments if the interests of the ward were at stake in an action on such an indemnity agreement. Where the guardian himself induces another by personal guaranties to assist in the purchase of securities which, while not permitted by statute, are likewise not prohibited by statute, there is no equity in permitting the guardian to escape the burden assumed and to cast it upon the other party when loss results from transactions had in reliance upon those guaranties. This is not a case where the party must rely upon his own fraud or wrong in order to recover as was presented in *Riggs* v. *Palmer* (115 N. Y. 506). Neither is the contract one in effect to commit a tort as that under consideration in *Reiner* v. *North American Newspaper Alliance* (259 N. Y. 250).

Since we must hold that while the investments were unauthorized they were not prohibited, we cannot go to the extent of agreeing that public policy requires the agreement in suit to be held unenforceable. If further protection for the estate of infants is required, it should not be furnished by the extension of established rules as laid down by the courts but rather by legislative enactment.

The judgments of the Appellate Division in favor of the respondent Marie S. Livingston should be reversed and the judgments of the Special Term as against her affirmed, with costs to appellants against said Marie S. Livingston; otherwise the judgment should be affirmed.

O'BRIEN, J. (dissenting). I vote to affirm. Both parties knew that, pursuant to section 85 of the Domestic Relations Law and section 21 of the Personal Property Law, the guardian was exceeding her powers in purchasing speculative stocks for the estates of infants. Those statutes confer upon a guardian only those powers provided by section 111 of the Decedent Estate Law, which

in turn authorizes an executor to invest in the same kind of securities as those in which a savings bank may invest. The Banking Law (Cons. Laws, ch. 2, § 239) allows investments by savings banks in certain enumerated kinds of securities "*and no others.*" A savings bank, therefore, violates the statute when it purchases securities not authorized by this section and this guardian not only exceeded her powers in buying speculative stocks but also violated the statute. These investments were not only unauthorized but were actually prohibited. Defendant Barret was aware of this fact and aided her in her violation. He is equally liable. (*National Surety Co.* v. *Manhattan Mortgage Co.*, 185 App. Div. 733.) Before the guardian made her indemnity agreement with him, he wrote to her suggesting that her attorney " has no doubt told you that there is some liability connected with doing this, which you are ready to assume and which I will be also, if it would only concern us, but in the event of the death of either one of us, as you know, other factors would be brought in, and he has therefore suggested that you should write me a letter absolving me of any such liability."

The Appellate Division has unanimously decided that an agreement so intentionally violative of the purpose of the statute enacted for the protection of infants' property is void as against public policy. Courts are not eager to protect one who makes such a contract, but they will refuse to aid another who has participated with that one in the violation of a statute. Not only does the conclusion of the Appellate Division in this case appear to be firmly based on the law but it seems to be a most salutary rule. A different result tends to encourage stockbrokers, without incurring any liability, to induce guardians and other trustees to gamble in speculative stocks forbidden by the Banking Law, the Decedent Estate Law and the Domestic Relations Law.

CRANE, Ch. J., LEHMAN and LOUGHRAN, JJ., concur with HUBBS, J.; O'BRIEN, J., dissents in opinion; CROUCH and FINCH, JJ., not sitting.

Judgment accordingly.