92 So.2d 692

**Myrtis GIBSON**

v.

**S. W. ANDERSON, Guardian.**

4 Div. 879.

Supreme Court of Alabama.

Dec. 21, 1956.

Rehearing Denied Feb. 28, 1957.

**554**

John C. Walters, Troy, and J. O. Sentell, Jr., Montgomery, for appellant.

E. C. Orme, Troy, for appellee.

GOODWYN, Justice.

S. W. Anderson, as guardian of Herbert Leo Gibson, a minor (appellee), instituted a declaratory judgment proceeding in the circuit court of Pike County, in equity, against Mrs. Myrtis Gibson, individually and as administratrix of the Estate of Leo Gibson, deceased (appellant), for the purpose of determining the ownership of a house and lot in the City of Troy. Testimony was taken orally before the trial judge, after which a decree was rendered in favor of complainant. This appeal is by respondent from that decree.

The facts are substantially as follows: In 1938 the first wife of Leo Gibson purchased the house and lot in question. In 1945 Mr. Gibson and his first wife assumed custody of the child in whose behalf this suit is brought with the intention of adopting him. There were some difficulties in consummating the adoption. In 1948, before the child could be legally adopted, Mr. Gibson's first wife died intestate. Under the law of descents and distributions, Code 1940, Tit. 16, §§ 1, 12, the house and lot then passed to the first wife's mother and father subject to a life estate in the husband.

In March, 1949 Mr. Gibson filed a petition in the Pike County Probate Court for

adoption of the child, and asked that his name be legally changed to "Herbert Leo Gibson". An interlocutory decree granting the petition was issued in June, 1949, and a final decree in June, 1950. It appears that the child had been popularly known as "Bert" or "Herbert Leo" for some time before his name was legally changed.

The father and mother of Leo Gibson's first wife had been divorced for some time at the time of her death. Her mother was remarried to Charles Anderson. In 1949 her father, Carl Jones, executed a quitclaim deed of his interest in the house and lot to "Herbert Leo Gibson". Later, in March, 1951, the mother, Mrs. Charles Anderson and her husband also deeded their interest in the property to "Herbert Leo Gibson". At the trial all three of the grantors testified that they had intended to convey their interest in the property to the child and that the grantee in the deeds was the boy and not his adoptive father. They testified further that Mr. Gibson had had the quitclaim deeds prepared and that he had stated that he wanted the property to go to his adopted son and that the deeds were for the purpose of conveying to the boy and not to himself.

In 1953 Mr. Gibson remarried, and about a year later died intestate. His second wife, individually and as administratrix of his estate, is the respondent-appellant in this suit.

After Mr. Gibson's death the second wife petitioned the court to have the house and lot set aside as a homestead for herself and the child. The child's legal guardian then filed this suit for declaratory judgment alleging that the father and mother of the first wife had conveyed the house and lot to the child and not to his adoptive father, and that the property, therefore, belonged to the child outright and was not a part of Mr. Gibson's estate.

The principal question for determination by the trial court was, of course, the identity of the grantee in the two quitclaim deeds from the father and mother of the first wife. The court found that the grantee was the child and not the father, and a decree was rendered accordingly.

The first question presented is whether there was sufficient legal evidence before the trial court to support the decree.

There appears to be no question that a latent ambiguity is presented with respect to the intended grantee in the two quitclaim deeds. It is said that "a latent ambiguity arises when the writing on its face appears clear and unambiguous, but there is some collateral matter which makes the meaning uncertain", 32 C.J.S., Evidence, § 961b, p. 915; "that is, an uncertainty which does not appear on the face of the instrument, but which is shown to exist for the first time by matter outside the writing", 20 Am.Jur., Evidence, § 1157, p. 1010. And it is well established that parol or other extrinsic evidence is admissible to explain or clarify a latent ambiguity. Kimbrough v. Dickinson, 247 Ala. 324, 24 So.2d 424, 426; Reichert v. Jerome H. Sheip, Inc., 206 Ala. 648, 652, 91 So. 618; Pieme v. Arata, 202 Ala. 427, 428, 80 So. 811; Reynolds v. Trawick, 197 Ala. 165, 167, 72 So. 378; Garrow v. Toxey, 188 Ala. 572(2), 66 So. 443; Hereford v. Hereford, 131 Ala. 573, 576, 32 So. 620; Guilmartin v. Wood, 76 Ala. 204, 209; Chambers v. Ringstaff, 69 Ala. 140, 143–145; 20 Am.Jur., Evidence, § 1157, p. 1010; 32 C.J.S., Evidence, § 961, pp. 915–918.

The rule is thus stated in Guilmartin v. Wood, supra:

"In the construction of written instruments, the general rule excludes any direct evidence of the intention of the parties, except such as is furnished by the writing itself, when considered in the light of the surrounding facts and circumstances. Parol evidence is admissible, to explain an ambiguity that does not appear on the face of the writing, but arises from some extrinsic, collateral matter—to point out, and connect the writing with the subject-matter, and to identify the object pro-

556

posed to be described. 'Such evidence is received, not for the purpose of importing into the writing an intention not expressed therein, but simply with the view of elucidating the meaning of the words employed; and in its admission, the line which separates evidence which aids the *interpretation* of what is in the instrument, from direct evidence of intention independent of the instrument, must be kept steadily in view; the duty of the court being, to declare the meaning of what is written in the instrument, not of what was intended to be written.' Hughes v. Wilkinson, 35 Ala. 453. The oral evidence must not be inconsistent with the writing."

Appellant insists that complainant's entire case rests upon the testimony of the grantors in the two quitclaim deeds to "Herbert Leo Gibson", most of which is said by appellant to be inadmissible. All three of these witnesses testified to statements of the deceased, Herbert Leo Gibson, Sr., to the effect that he wished the property to go to his adopted son, and that the deeds were for the purpose of conveying to the boy. Appellant insists that such evidence was inadmissible under the so-called Dead Man's Statute, Code 1940, Tit. 7, § 433, and did not constitute legal evidence in the cause. They also testified, as already noted, that they intended to deed the property to the boy. It is argued that if such incompetent testimony is excluded from consideration there is insufficient evidence to support the decree.

■ The trial court did not specifically rule on the admissibility of any of the testimony which was offered. Therefore, under Code 1940, Tit. 7, § 372(1), Pocket Part, Act No. 101, approved June 8, 1943, Gen. Acts 1943, p. 105, we must assume that the court considered only the evidence which was properly admissible, and if there was sufficient legal evidence to support the findings of the court, the decree must be sustained as if it were the verdict of a jury. Dougherty v. Hood, 262 Ala. 311, 313, 78 So.2d 324. It may be, as insisted by appellant, that the weight of the evidence supports her position, but, on the whole, we think it was fairly a jury question which the trial court resolved against her. The established rule of review is that the finding of the trial court on evidence given orally before it, as in the instant case, is entitled to the weight accorded the verdict of a jury and will not be disturbed on appeal unless plainly and palpably wrong. Dorsey v. Dorsey, 259 Ala. 220, 225, 66 So.2d 135; Haden v. Boykin, 259 Ala. 504, 507, 66 So.2d 708; Alabama Mills v. Brand, 251 Ala. 643, 645, 38 So.2d 574; Meadows v. Hulsey, 246 Ala. 261, 262, 20 So.2d 526. We cannot say that the decree in this case is plainly and palpably wrong.

■ We have carefully examined the record. Excluding from consideration the testimony said by appellant to be inadmissible we still find evidence sufficient to support the trial court's conclusion that the deeds were made to the boy instead of to the father. In this situation it is unnecessary to pass on the admissibility of the evidence to which appellant objects. Dougherty v. Hood, supra.

Appellant insists that complainant is estopped to deny that title to the property was in Herbert Leo Gibson, Sr., because he allowed Mrs. Gibson to pay off the mortgage on the property before asserting the rights of the ward, and because he had assessed the property as a homestead exemption of Mrs. Gibson while acting in her behalf.

■ The general rule is that a guardian cannot impair the rights of his ward, or create an estoppel against the ward, by his own acts or omissions. Hobbs v. Nashville, Chattanooga, & St. Louis Railway Co., 122 Ala. 602, 609, 26 So. 139, 82 Am.St.Rep. 103; 25 Am.Jur., Guardian & Ward, § 101, p. 66; 39 C.J.S., Guardian and Ward, § 99, p. 174.

The rule is stated as follows in 25 Am. Jur., Guardian & Ward, § 101, p. 66:

"It is the prevailing view that a guardian may not waive legal rights in

behalf of his ward, or surrender or impair rights vested in the ward, or impose any legal burden thereon. Nor, according to the generally accepted view, can the ward or his estate be estopped, or held to have ratified an illegal transaction, by reason of the guardian's act. * * *."

The rule is thus stated in 39 C.J.S., Guardian and Ward, § 99, p. 174:

"A guardian cannot, as a rule, create an estoppel against the ward by his own acts or omissions. Infant wards cannot generally be estopped by the unauthorized or illegal acts of a properly constituted guardian; * * *. A guardian by his conduct, default, or silence cannot bar the ward of his rights; a ward is not estopped to assert any rights to property by reason of any negligence on the part of his guardian; * * *."

It seems clear that Anderson's act can in no way prejudice the rights of his ward.

Appellant argues, however, that even if the rights of the ward are unimpaired and no estoppel against the ward was created by the acts of his guardian, that Anderson himself is estopped to assert the rights on behalf of the ward. We see no merit in this argument. It seems clear to us that the acts which the appellant relies on to create an estoppel were done by Anderson as an individual and not in his capacity as guardian. The generally accepted rule is that the acts of a guardian in his individual capacity cannot estop him from asserting the rights of his ward in his representative capacity as guardian. Mazer v. City National Bank, 25 Ala.App. 372, 373, 146 So. 885; 31 C.J.S., Estoppel, § 134, p. 402.

Affirmed.

LIVINGSTON, C. J., and SIMPSON and SPANN, JJ., concur.