Dye, J.
 

 The question posed on this appeal taken as of right is whether an indemnity agreement, contained in a general release given by the parent in settlement of an infant’s claim, is unenforcible as a matter of public policy.
 

 The infant plaintiff, Ellen Valdimer, sustained injuries on August 16, 1955, while enrolled at the Summer camp operated by the defendant, allegedly due to the latter’s negligence. Subsequently, but before any suit had been brought, the adult plaintiff, as parent, negotiated a settlement of the infant’s claim, as well as his own, for incidental relief in the sum of $400. In consideration of the payment of that sum, the parent executed a document entitled ‘1 Parents-Gu ardían Release and Indemnity Agreement ” which contained a general release of his and the infant’s claims and an affirmative agreement to indemnify and hold the defendant harmless against all loss, damage and expense by reason of any suit subsequently brought by or od behalf of the infant at any time or by reason of any judgment that might be obtained on account of the occurrence. This was done November 17, 1955. Later, in November, 1958, the parent, as guardian ad litem and individually, commenced this action to recover damages for the injuries suffered by the infant and for his own incidental loss. The defendant joined issue by filing its answer, in which it denied generally all allegations of negligence and damage, set up the Statute of Limitations against the parent, pleaded as a complete defense that the claim of the parent, if any, had been settled in full for the payment of $400 and pleaded the payment as a partial defense against the infant. The answer also set up against the adult plaintiff a counterclaim based on his agreement to indemnify. Plaintiffs then made the within motion to strike from the answer the partial defense and the counterclaim. Special Term granted the motion. The Appellate Division restored the partial defense and, having so modified, affirmed the order appealed from.
 

 The courts below have taken the view that the indemnity agreement is void, since enforcement would contravene the public policy enunciated in article 80 of the Civil Practice Act, which renders unenforcible any agreement purporting to
 
 settle
 
 an infant’s claim for personal injuries unless approved by the
 
 *24
 
 court or a judge thereof. The dissenting Justice in the Appellate Division had no difficulty with the unenforcibility of the agreement as to the infant since she was under a legal incapacity unavailable to the parent, but expressed the view that to excuse the parent, who had taken a consideration for his agreement to indemnify, and in the absence of fraud or mistake, was to run counter to our holding in
 
 Delafield
 
 v.
 
 Barret
 
 (270 N. Y. 43).
 

 Patently, article 80 of the Civil Practice Act (added by L. 1947, ch. 366), enacted pursuant to recommendation by the Judicial Council (Thirteenth Annual Report of N. Y. Judicial Council, 1947, p. 193), was designed to safeguard the rights and interests of infants by empowering the courts to scrutinize the facts regarding the propriety and reasonableness of the proposed settlement of an infant’s claim. The procedure thus authorized permits a negotiated compromise of an infant’s claim without the preliminary necessity for the commencement of an action or the appointment of a guardian ad litem, as had been the practice theretofore. It is true the statute is permissive in nature and makes no change in the substantive law, but, as a majority of the court below pointed out, it is equally true that no settlement obtained without court approval, whether before or after the commencement of an action, is enfofeible. The courts are bound to protect infants, who are their wards
 
 (Greenburg
 
 v.
 
 New York Cent. & H. R. R. R. Co.,
 
 210 N. Y. 505), and the lower courts have remained faithful to their trust by adhering consistently to this salutary rule
 
 (Joyce
 
 v.
 
 Washington Stor. Warehouse & Van Co.,
 
 176 App. Div. 538;
 
 Gordon
 
 v.
 
 Agaronian,
 
 10 Misc 2d 650; approved: Thirteenth Annual Report of N. Y. Judicial Council, 1947, pp. 203-204).
 

 Turning to the question posed on this appeal, we must decide whether a contract, validly executed by responsible parties, is nonetheless unenforeible by reason of a possible conflict with the infant’s interests.
 

 The courts of two of our sister States, when faced with the identical question, answered in the affirmative and declared such indemnity agreements against the public policy of their respective jurisdictions
 
 (Loesch
 
 v.
 
 Vassiliades,
 
 17 N. J. Super. 306 [1952];
 
 Ohio Cas. Ins. Corp.
 
 v.
 
 Mallison,
 
 354 P. 2d 800 [Oregon, 1960]). We reach the same conclusion.
 

 
 *25
 
 Since article 80 of the Civil Practice Act and rule 294 of the Rules of Civil Practice plainly were adopted to prevent injustices with respect to infants’ claims, it follows that to allow a tort-feasor to extract a promise of indemnification from the parent of the injured child is effectively to frustrate the purpose of requiring judicial approval to give binding effect to settlement agreements. Clearly, a parent who has placed himself in the position of indemnitor will be a dubious champion of his infant child’s rights.
 

 We note that, by subdivision 2 of rule 40 of the Rules of Civil Practice, the guardian ad litem and the special guardian 1 ‘ shall have no interest adverse to that of the infant or incompetent nor be connected in business with the attorney or counsel of any adverse party, nor shall he be nominated by any person having an adverse interest”
 
 (Bose
 
 v.
 
 Wehrli,
 
 186 Misc. 325 [Sup. Ct., Nassau County, 1945]). The rule is based on an apprehension of prejudice to the infant, made possible by conflicting interests — and this, despite the presence and supervision of the courts, and the judicial approval required of all acts affecting the infant’s rights.
 

 A fortiori, we are extremely wary of a transaction that puts parent and child at cross-purposes and, in the main, normally tends to quiet the legitimate complaint of the minor child. G-enerally, we may regard the parent’s contract of indemnity, however well-intended, as an instrument that motivates him to discourage the proper prosecution of the infant’s claim, if that contract be legal. The end result is either the outright thwarting of our protective policy or, should the infant ultimately elect to ignore the settlement and to press his claim, disharmony within the family unit. Whatever the outcome, the policy of the State suffers.
 

 Appellant has reminded us that the procedures authorized by article 80 and rule 294 are permissive, not mandatory, and in this, of course, it is correct. If a tort-feasor wishes to advance money to an infant claimant on the faith of a contract that cannot serve to bind the latter, it is at liberty to do so. Indeed, nothing in our policy requires a different construction of the statutory procedures, since it is the welfare of the infant, not of the tort-feasor, which we seek to safeguard.
 

 But appellant considers the permissive nature of the statutory procedures a factor compelling the result reached in
 
 Delafield
 
 v.
 
 *26
 

 Barret (supra).
 
 In the
 
 Delafield
 
 case a general guardian, upon the advice of her attorney, agreed to indemnify a firm of investment brokers against any losses that might be sustained as a result of investing her children’s funds “in securities other than those which a guardian is permitted to invest in under the laws of this State ”, namely, those specified in section 111 of the Decedent Estate Law. The issue there, as here, was whether the indemnity agreement was unenforcible. We held, in that case, that the agreement could be enforced, stating that the investment of funds in securities not expressly authorized by statute does not in and of itself constitute tortious conduct. The effect of such investments is to deprive the fiduciary of the defense of good judgment or good faith, in an action brought to recover the amount of the loss suffered. Where the guardian herself induced the unauthorized investments, in the belief that her wards would thereby be benefited, even though she was aware of her potential liability direct to the children, it was not improper to hold her to her contract with the brokerage firm.
 

 The differences between
 
 Delafield {supra)
 
 and the case at bar command a contrary result.
 

 The first point of departure is the nature of the wrong done to the infant. Here, without- question, the complaint states a cause of action in tort. In
 
 Delafield {supra),
 
 this court expressly characterized the basis of liability to the infant as nontortious. The investment of funds in unauthorized securities was, by legislative pronouncement, unwise, and was discouraged by the imposition of liability for resultant losses. Secondly, the
 
 Delafield
 
 indemnity agreement sought to protect the brokerage firm from potential loss caused by its purposeful exercise of judgment, legislatively deemed in advance to be unwise. The infants were empowered to sue either the firm or the guardian, or both. If gains had been achieved through the unauthorized investments, the infants naturally would have been benefited. In that respect the inducement provided by the guardian, set in the form of the indemnity contract, was not patently to the children’s disadvantage. If, on the other hand, the investments had proved to be ill-advised, as was the fact in
 
 Delafield,
 
 the contract of indemnity would merely have had the effect of thrusting the burden of liability entirely on the guardian, against whom the children could have proceeded directly from the beginning. In the case
 
 *27
 
 now before us the circumstances are in no wise similar. Here, the indemnity agreement was entered into after the creation of presumptive liability; and the contracting parent was free from the wrongdoing on which the infant’s claim was grounded. The sole purpose of the agreement was to induce settlement of the claim without the safeguard of judicial approval, and its practical effect was to bind the child to the settlement so reached. If we give recognition to the indemnity provision, the child will be penalized for her father’s indiscretion: the very situation our public policy seeks to avert.
 

 Superficially, the
 
 Delafield
 
 holding may appear to control here. Indeed, the Supreme Court of Oregon was unable to distinguish that ease in arriving at its own result in the
 
 Mallison
 
 case (cited
 
 supra).
 
 But the two cases are perfectly consistent with each other. In the one case the indemnitor strove to benefit her wards by means over which there was honest disagreement between herself and the Legislature; she was made to bear the responsibility for her unauthorized handling. In the other ease the indemnitor and indemnitee have attempted to circumvent a procedure designed for the safety of the child, a procedure established on the theory that no one but a court can bind an infant to a contract settling a claim for the negligent infliction of personal injuries.
 

 Accordingly, the judgment appealed from should be affirmed, with costs.
 

 Chief Judge Desmond and Judges Fuld, Froessel, Van Voorhis, Burke and Foster concur.
 

 Judgment affirmed.