ROBERTSON, Presiding Judge.
On April 16, 1989, Marsha Ann Ingram suffered a back injury arising out of and in the course of her employment with Brook-wood Health Services, Inc., when she slipped and fell on the wet floor of an operating room at Brookwood Hospital. On January 26, *25 1993, Ingram filed a complaint in the Circuit Court of Jefferson County, seeking workmen’s compensation benefits.[1]
Following an ore tenus proceeding, the trial court entered a judgment on November 10, 1993, finding that Ingram had suffered a compensable injury within the meaning of the Workmen’s Compensation Act. The trial court calculated Ingram’s average weekly earnings as follows:
“As proof of average weekly wages, [Ingram] has introduced many records, including [her] exhibit 9, which is a summary of those records. Adding [Ingram’s] gross income as proven to the tax deferred compensation, plus one-half of [her] tax deferred compensation [from Brookwood’s] employer contribution, plus $62.93 weekly fringe benefit, the court finds [Ingram’s] average weekly wage at the time of the injury to be $380.14 per week.”
The trial court also found that Ingram had a preexisting disability within the meaning of § 25-5-58, Ala.Code 1975. Taking into account only Ingram’s injury from her April 1989 accident, the trial court found that she had suffered a 37% loss of the ability to earn. The trial court stated that Brookwood had compensated Ingram for 204¾ weeks of temporary total disability. Thus, using the formula provided for in § 25-5-57(a)(3)g, Ala. Code 1975, the trial court awarded her compensation in the amount of $93.77 per week for 95¾ weeks, less the number of weeks, if any, for which she had received temporary total disability benefits since July 30, 1993.
Ingram appeals, raising three issues: (1) whether the trial court correctly calculated her average weekly earnings; (2) whether the trial court correctly found that she had a preexisting disability at the time of her injury; and (3) whether the trial court correctly determined that Ingram was not permanently and totally disabled as a result of her injury.
We first consider whether the trial court incorrectly calculated Ingram’s average weekly earnings. Section 25-5-57(b) provides, in pertinent part:
“Average weekly earnings shall mean the earnings of the injured employee in the employment in which he was working at the time of the injury during the period of 52 weeks immediately preceding the date of the injury divided by 52, but if the injured employee lost more than seven consecutive calendar days during such period, although not in the same week, then the earnings for the remainder of such 52 weeks shall be divided by the number of weeks remaining after the time so lost has been deducted.... Whatever allowances of any character made to an employee in lieu of wages [that] are specified as part of the wage contract shall be deemed a part of his earnings.”
(Emphasis added.) This formula is mandatory upon the trial court when one claiming workmen’s compensation benefits has worked for the same employer for 52 weeks preceding his or her injury. Johnson v. Cullman Medical Center, 615 So.2d 621 (Ala.Civ.App.1992). However, the claimant bears the burden of proving what the average weekly earnings were. Shields v. GTI Corp., 607 So.2d 253 (Ala.Civ.App.1992).
The record reflects that Ingram worked for Brookwood for almost five years preceding her injury. Exhibits introduced at trial reflect that, during the 52-week period before her April 1989 injury, Ingram had earned $15,492.21, not including Brookwood’s weekly payment of $62.93 toward her medical and dental insurance throughout the 52 weeks preceding her April 1989 injury; her contribution of $668.83 to a tax-deferred savings plan; and Brookwood’s contribution of $334.42 to that plan as a 50% employer contribution.[2] The trial court took those benefits into account in calculating Ingram’s aver *26 age weekly earnings. § 25 — 5—57(b); Ex parte Murray, 490 So.2d 1238 (Ala.1986).
Ingram argues that her gross earnings should be divided by 36 because, she says, she worked only 36 weeks during the 52 weeks preceding her April 16, 1989, injury. Ingram testified that she had missed eight weeks of work in May, June, and July 1988 and that she had missed an additional week when her father had died in February 1989. There was also undisputed evidence from her payroll records that during the 52 weeks preceding her injury there were several periods during which she “lost more than seven consecutive calendar days” from her employment, i.e., more than seven consecutive calendar days for which she was not paid. During the proceedings at trial, the trial judge made the following statement regarding the number of weeks that Ingram “lost”:
“Y’all are looking at exactly the same records. You [Brookwood’s attorney] say it’s 12 weeks or 10 weeks, and you [Ingram’s attorney] say it’s 16 weeks. Y’all look at it and if there is a piece of paper that shows that she worked for those six weeks, that somehow you don’t have, Mr. Cameron [Ingram’s attorney], then we can conclude she worked for those six [weeks]. If, on the other hand, there is not a piece of paper showing she worked for those six weeks, then we can conclude she was off 16 weeks.”
However, in calculating Ingram’s average weekly earnings in the judgment, the trial court did not deduct any “time so lost” in accordance with § 25 — 5—57(b). Instead, the trial court divided her total earnings by 52 weeks and failed to deduct any “time so lost” from the 52 weeks.
In addition, there occurred the following exchange regarding Ingram’s average weekly earnings between the trial judge and the parties’ attorneys:
“THE COURT: Tell me what you say her average weekly wage was.
“MR. LAWSON [Brookwood’s attorney]: $429.19.
“THE COURT: And you say $539 something?
“MR. CAMERON: $532, approximately.”
The trial court calculated that Ingram’s average weekly earnings were $380.14, almost $50 less than Brookwood had argued at trial. Therefore, in light of the record and § 25 — 5—57(b), we conclude that the trial court incorrectly calculated Ingram’s average weekly earnings.
Next, we consider whether the trial court correctly found that Ingram had a preexisting disability at the time of her injury. In Ex parte Eastwood Foods, Inc., 575 So.2d 91 (Ala.1991), our supreme court set out the standard for appellate review of factual determinations in a workmen’s compensation case:
“Initially, the reviewing court will look to see if there is any legal evidence to support the trial court’s findings. If such evidence is found, then the reviewing court determines whether any reasonable view of that evidence supports the trial court’s judgment.”
575 So.2d at 93. The second prong of this standard was further explained in Ex parte Veazey, 637 So.2d 1348 (Ala.1993):
“Where one reasonable view of the evidence supports the trial court’s judgment, the judgment must be upheld, even if another, perhaps better reasoned, view of the evidence might have dictated a different outcome.”
637 So.2d at 1349.
The record reflects that Ingram began working for Brookwood in 1984. Two months after being hired, she was moved to the labor and delivery division, where she remained until February 19, 1990, her last day of work. Ingram admitted that she had suffered work-related injuries to her back on August 5, 1987, April 25, 1988, September 7, 1988, October 30, 1988, and February 17, 1989. She testified that in January 1989 she had agreed to a settlement of the workmen’s compensation claim that she had filed based on her August 5, 1987, and her September 7, 1988, injuries.
Testifying by deposition, Dr. Walter Whi-tehurst, a Birmingham neurosurgeon, stated that in May 1988 he had performed a lami- *27 neetomy on Ingram s L-4 and L-5 vertebrae, the same vertebrae Ingram injured in the April 1989 accident. Following the May 1988 surgery, Ingram was placed on work-hardening therapy, which required that she leave work two hours early. From the May 1988 surgery until shortly before the April 1989 accident, Ingram continued to seek treatment from Dr. Whitehurst and Dr. Michael Chandler, a family practitioner at Brookwood Hospital. Throughout this time, Ingram constantly complained to both doctors of severe lower back pain, and they restricted the amount Ingram could lift at work and the amount of time that she could work.
Also testifying by deposition, Dr. Swaid M. Swaid, a Birmingham neurosurgeon, testified that when Ingram sought treatment from him on January 9, 1990, she had told him that she was having pain in her lower back and leg, stemming from an injury that she had suffered in 1987. In his deposition, Dr, Whitehurst testified that during his examinations of Ingram following the April 1989 accident, she had complained of the same pain that had characterized her 1987 injury.
This court has held that “if an employee was able to perform [her] work prior to the time of the subject injury, then no preexisting condition was present for compensation purposes.” Blue Circle, Inc. v. Williams, 579 So.2d 630, 633 (Ala.Civ.App.1991). However, Ellen Carmichael, Ingram’s supervisor in 1988 and 1989, testified that although Ingram was an excellent nurse, she had returned from her May 1988 surgery unable to lift, turn, or transport patients, as nurses in the labor and delivery division must be able to do. Carmichael testified that Ingram’s condition never improved, and that from the date Ingram had returned from her surgery until her April 16, 1989, injury, Ingram had been unable to perform the normal job requirements of a registered nurse.
Thus, there existed evidence in the record to suggest that Ingram had been unable to perform her work before she suffered the subject injury. We conclude that one reasonable view of this evidence supports the trial court’s finding that Ingram had a preexisting disability. Veazey; Eastwood Foods. Based upon this finding, the trial court was obligated to award Ingram compensation only for the injury that would have resulted if the previous disability had not occurred. §§ 25-5-57(a)(4)e., 25-5-58, Ala.Code 1975.
We now consider whether the trial court correctly determined- that Ingram was not permanently and totally disabled as a result of her April 1989 injury. Testifying by deposition, Dr. Dan Doleys, a psychiatrist who treated Ingram at the Pain and Rehabilitation Institute, stated that Ingram’s pain complaints had resulted, in part, from factors other than her physical condition, including her emotional distress and depression arising from her marital problems.
Virginia Spruce, a certified rehabilitation counselor and an area manager for American International Health and Rehabilitation Services, Inc., testified that her examination of Ingram revealed that, as a result of the April 1989 injury, Ingram has suffered a 37% vocational loss. Spruce testified that Ingram could still perform sedentary work and supervisory functions and that she had marketable skills and knowledge, especially in the home health field. We conclude, therefore, that one reasonable view of this evidence supports the trial court’s finding that Ingram was not totally and permanently disabled as a result of the April 1989 injury. Veazey; Eastwood Foods.
Based on the foregoing, the trial court’s judgment is due to be affirmed in part and reversed in part. We remand this cause to the trial court with instructions to recalculate Ingram’s average weekly earnings in accordance with the provisions of § 25-5-57(b), Ala.Code 1975.
AFFIRMED IN PART; REVERSED IN PART; AND REMANDED WITH INSTRUCTIONS.
THIGPEN and YATES, JJ., concur.

. Because of the date of the alleged injury, this case is governed by the Workmen's Compensation Act as it read before the amendment effective May 19, 1992.

. Ingram contends that the “paid time off” that she received from Brookwood should also be considered a fringe benefit for the purpose of calculating her "average weekly earnings” within the meaning of § 25 — 5—57(b). However, she has submitted insufficient evidence to determine whether her "paid time off” was a fringe benefit.