ROBERTSON, Presiding Judge.
On November 2,1995, Mary Virginia Pearson Oberkor filed a complaint against Central Alabama Home Health Care Services, Inc. (“Home Health”), in the Circuit Court of Tallapoosa County. Oberkor’s complaint averred that she had been injured on September 28, 1993, while working in the line and scope of her employment, and it sought payment of workers’ compensation disability benefits and medical expenses pursuant to the Alabama Workers’ Compensation Act (“the Act”). On December 11, 1995, Home *1268 Health answered Oberkor’s complaint, denying that Oberkor’s injury was covered by the Act.
After ah ore tenus hearing on February 12, 1997, the trial court entered a judgment finding, among other things, that Home Health had paid all compensation due to Oberkor under the Act. That judgment stated, in pertinent part:.
“1. That though [Oberkor] has a workers’ compensation injury, she recovered from that injury pursuant to the testimony of Dr. Jon Widener, and her treatment from November 30, 1993, forward was related to pre-existing problems. The Court accepts this as credible testimony and applies Ala.Code 1975, Section 25-5-57(a)(4)(e) and Section 25-5-58. In doing so, the Court must find in favor of [Home Health], Pursuant to the statute, [Home Health] is not responsible for the preexisting injury, and the pre-existing injury is what is causing [Oberkor’s] present problems.
“2. That [Oberkor] has not proved medical causation as is required by Ex parte Moncrief, 627 So.2d 385 (Ala.1993).
“3. [Home Health] is not responsible for the medical bills of the unauthorized physician, Dr. Kenyon Rainer. Genpak Corp. v. Gibson, 534 So.2d 312 (Ala.Civ.App.1988); Condry v. Jones Farm Equipment Co., 358 So.2d 1030 (Ala.Civ.App.1978); Ala.Code 1975, Section 25-5-77.
“4. That [Home Health] has paid all compensation due to [Oberkor] under the Workers’ Compensation Act.
“5. That [Home Health] has paid all authorized medical expenses due [Oberkor] under the Workers’ Compensation Act of Alabama.”
Oberkor appeals, raising several issues. However, we find the dispositive issues to be: 1) whether the trial court erred in holding that Oberkor had a preexisting injury for purposes of the Act; 2) whether the trial court erred in holding that Oberkor had failed to establish medical causation; and 3) whether the trial court erred in holding that Home Health was not liable for the medical bills that Oberkor incurred for treatment she received from an unauthorized physician.
Because Oberkor’s accident occurred in September 1993, the new Workers’ Compensation Act applies to her claim. The applicable standard of review for workers’ compensation cases under the new Act was established by our Supreme Court in Ex parte Trinity Indus., Inc., 680 So.2d 262, 268-69 (Ala.1996):
“We will not reverse the trial court’s finding of fact if that finding is supported by substantial evidence — if that finding is supported by ‘evidence of such weight and quality that fair-minded persons in the exercise of impartial judgment can reasonably infer the existence of the fact sought to be proved.’ ”
(quoting West v. Founders Life Assur. Co., 547 So.2d 870, 871 (Ala.1989)). See also § 25-5-81(e)(2), Ala.Code 1975.
Our review of the record reveals the following. From sometime before August 1992 to September 1994, Oberkor was employed with Home Health as a home health care assistant. In August 1992, Oberkor was involved in a non-work-related automobile accident.. Oberkor testified that after that accident she received treatment for injuries to her neck and back. Oberkor further testified that because of her 1992 accident, her treating physician had performed an MRI.on her neck and back and had found disc herniations in C3-4 and C4-5 of her neck. Oberkor stated that she was out of work for several days recovering from the 1992 accident, but that she quickly returned to work and performed her job thereafter without any problems.
It is undisputed that on September 18, 1993, Oberkor was involved in an automobile accident while working in the scope of her employment and that in that accident she sustained injuries to her neck and back. Ob-erkor testified that she received treatment from Dr. John James at Russell Hospital for these injuries, but that she felt that her condition did not improve. Oberkor testified that she contacted Bill Hicks, Home Health’s workers’ compensation insurance adjuster, and requested that she receive treatment from another physician. She téstified that Hicks arranged for her to see Dr. Jon Widener, an orthopedic surgeon.
Oberkor testified that she told Dr. Widener that she was experiencing pain in her neck and back, dating from her September 1993 accident. She testified that Dr. Widener *1269 performed an MRI on her neck and back to determine the extent of the injuries. Dr. Widener testified that he and Dr. Barbara C. Molina, a radiologist, compared Oberkor’s 1993 MRI with the MRI that had been performed on Oberkor after her 1992 automobile accident. Dr. Widener stated that, in his opinion, the 1993 MRI revealed exactly the same two disc herniations in Oberkor’s neck, with no significant changes since her 1992 MRI. Dr. Widener testified that, based on this information, it was his opinion that Ober-kor’s disc herniations predated the September 1993 automobile accident.
It is undisputed that Dr. Widener met with Oberkor in November 1993 and informed her of his opinion that her back injury predated her 1993 accident. Dr. Widener testified that he told Oberkor that further treatment of her injury would probably not be covered by Home Health’s workers’ compensation carrier because it was preexisting. Dr. Widener also testified that he told Oberkor that she might want to have her preexisting back injury treated and suggested that she contact Dr. Rainer, a neurosurgeon. Dr. Widener testified that he notified Home Health’s workers’ compensation carrier that, insofar as her September 1993 accident was concerned, Oberkor had fully recovered and could return to work without limitations, but that she did have preexisting back injuries.
Oberkor testified that, based on Dr. Widener’s recommendation that she receive treatment for her preexisting injury, she contacted Dr. Kenyon Rainer, who was not a physician authorized by her compensation carrier. Oberkor testified that she first met with Dr. Rainer on December 7,1993.
Dr. Rainer testified that, based on his examination of Oberkor, it was his opinion that Oberkor needed back surgery and that the September 1993 automobile accident caused the injury that necessitated this surgery. Dr. Rainer testified that although he agreed that Oberkor’s 1992 MRI and the 1993 MRI were identical, he based his opinion that the 1993 accident was the cause of her pain on Oberkor’s medical history.
Dr. Rainer testified that he subsequently performed back surgery on Oberkor and was at the time of trial treating Oberkor for her back injuries. Dr. Rainer stated that, in his opinion, Oberkor has had a 15% physical impairment since her back surgery and a 100% vocational impairment because of her back injuries and her lack of education.
Oberkor testified that even after the back surgery she was unable to return to work, even on light duty, because, she said, the pain in her neck and back was too severe. Home Health terminated her employment during September 1994.
Linda Moser, Oberkor’s supervisor at the time of her accident in September 1993, testified that, based, on her observations, she thought Oberkor had had no physical disabilities before her 1993 accident. She further stated that before the 1993 accident, Oberkor rarely missed work, that Oberkor was a good employee, and that she had regularly observed Oberkor pick up and move patients in the course of her émployment. Moser also noted that after the 1993 accident, Oberkor had carried herself in a very guarded way so as to seem protective of her upper body.
Oberkor presented a vocational expert, Michael McClanahan, who testified that in his opinion Oberkor was 100% disabled because of the 1993 accident. However, McClanahan admitted that ‘ when he did his vocational assessment, he was not aware of Oberkor’s 1992 accident. McClanahan also admitted that he based part of his assessment on an erroneous report that stated that Oberkor had had an incomplete cervical fusion. McClanahan testified that he was not aware that Oberkor’s cervical fusion had been completed and that this fact would have had an impact on the vocational rating he assigned to Oberkor.
Home Health presented a vocational expert, Virginia Spruce, who testified that, in her opinion, Oberkor was not disabled. However, Spruce also was not aware of Ob-erkor’s 1992 accident; she testified that she relied mainly on the testimony of Dr. Widener, and not that of Dr. Rainer, in forming her opinion.
We will first address whether the trial eourt erred in holding that Oberkor had a preexisting injury for the purposes of the Act. In her brief on appeal, Oberkor relies on the fact that, before her 1993 accident, she did not have any difficulty performing her duties as a home health assistant, to support her contention that she did not have a preex *1270 isting injury that would prevent her from receiving benefits under the Act. We agree.
The law in Alabama is well settled: “ ‘A preexisting condition will not affect a workmen’s compensation award if a job-related injury combined with that preexisting condition to produce disability.’ Tarver v. Diamond Rubber Products Co., 664 So.2d 207 (Ala.Civ.App.1994); Reynolds Metals Co. v. Stults, 532 So.2d 1035, 1038 (Ala.Civ.App.1988). Additionally, if the previous injury has not demonstrated itself as disabling and has not prevented the employee from performing his job in a normal manner, then the previous injury will not disqualify the claim under the ‘arising out of and in the course of his employment’ requirement of the statute. Tarver, supra, at 210, citing Blue Bell, Inc. v. Nichols, 479 So.2d 1264 (Ala.Civ.App.1985); Ex parte Lewis, 469 So.2d 599 (Ala.1985). Preexisting injury is defined in terms of its effect on the employee’s ability to earn. The existence of an infirmity that does not prevent an employee from performing his duties without modification, or from working ‘as a normal man,’ does not affect a compensation award. Gold Kist, Inc. v. Nix, 519 So.2d 556, 557 (Ala.Civ.App.1987).”
Holmes v. Gold Kist, Inc., 673 So.2d 449, 451 (Ala.Civ.App.1995). “A preexisting condition, as defined in Ala.Code 1975, § 25-5-58, is not present for purposes of compensation if prior to the accident the employee was able to perform her duties.” Georgia-Pacific Corp. v. Medley, 621 So.2d 306, 307 (Ala.Civ.App.1993) (emphasis added; citing Scott Paper Co. v. Smith, 600 So.2d 269 (Ala.Civ.App.1992)).
The facts in Holmes are similar to those in the present case. That case involved an employee who had incurred a non-work-related injury to his back that did not prevent him from performing the normal duties of his job. The employee in Holmes later incurred an on-the-job injury to the same area of his back. This court, reversing the trial court’s denial of workers’ compensation benefits, held that because the employee had performed his normal employment duties before he suffered his on-the-job injury, his workers’ compensation award should not have been affected by the preexisting injury. Holmes, 673 So.2d at 451.
Like the employee in Holmes, Oberkor had a non-work-related injury, that preceded an on-the-job injury. It is undisputed that this prior injury did not prevent Oberkor from fully performing her normal duties as a home health assistant. Therefore, for workers’ compensation recovery purposes, Oberkor’s preexisting injury does not limit her recovery for her 1993 work-related injury. Holmes, supra; compare Ingram, v. Brookwood Health Servs., Inc., 651 So.2d 24 (Ala.Civ.App.1994) (affirming the rejection of workers’ compensation benefits for a work-related back injury when the employee had been unable to perform the normal duties of her job because of a previous non-work-related back injury).
The dissent asserts that the trial court did not err in concluding that Oberkor had a preexisting injury, pursuant to §§ 25-5-57(a)(4)e. and 25-5-58, Ala.Code 1975. 716 So.2d at 1272. However, this court has held that when an employee performs his or her normal job duties before an on-the-job accident, § 25-5-58 is not applicable. Boothe v. Jim Walter Resources, Inc., 660 So.2d 604 (Ala.Civ.App.1995); Watson v. Presbyterian Retirement Corp., 615 So.2d 624 (Ala.Civ.App.1992). This court has also stated that in situations where an employee performs his or her normal job duties before an on-the-job accident, a trial court does not abuse its discretion in not apportioning benefits in accordance with §§ 25-5-57(a)(4)e. and 25-5-58. Ex parte Bratton, 678 So.2d 1079 (Ala.1996).
Our review of workers’ compensation cases is governed by the principle that the Act should be liberally construed to accomplish its beneficent purposes, and that all doubts must be resolved in favor of the employee. Holmes, supra; Scott Paper Co., supra. It would be contrary to the beneficent purposes of the Act to hold that’ Oberkor is dúe no benefits under the Act because she had preexisting back problems, when those problems did not impair her work performance. Such a holding would establish a defense to workers’ compensation claims based on the preexisting health problems of an employee even when those problems did not affect the employee’s work, and we are unwilling to create such a defense. There *1271 fore, we conclude that the trial court erred in holding that Oberkor had a preexisting injury for the purposes of the Act.[1]
Finally, we address Oberkor’s assertion that the trial court erred in concluding that Home Health was not liable for the medical bills that Oberkor incurred while receiving treatment for her injury from Dr. Rainer, an unauthorized physician.
“Under Alabama’s workers’ compensation laws, unless there is an emergency the employee must notify his employer when he wishes to consult another physician. Ex parte Grantham, 514 So.2d 1385 (Ala.1987). In United States v. Bear Brothers, Inc., 355 So.2d 1133 (Ala.Civ.App.1978), the Court of Civil Appeals set out exceptions for obtaining unauthorized, nonemer-gency treatment: (1) where the employer has neglected or refused to provide the necessary medical care; (2) where the employer has consented to the employee’s choice of physicians; (3) where notice of and request for alternative care would be futile and; (4) where other circumstances exist to justify the selection of alternative care by the employee.”
Ex parte Moncrief, 627 So.2d 385, 388 (Ala.1993).
Oberkor provided no justification for her failure to notify Home Health that she intended to consult another physician regarding her back injuries. The trial court was presented with testimony that tended to show that Oberkor knew that the notification process required her to receive authorization before consulting another physician. In fact, Oberkor testified that she utilized that very process in order to change her treating physician for her 1993 back injuries from Dr. James to Dr. Widener. Moreover, Oberkor testified that she knew, when she contacted him for her initial appointment, that Dr. Rainer was not an authorized physician.
Oberkor argues that Dr. Widener referred her to Dr. Rainer and that such a referral amounts to authorization by Home Health. However, the evidence presented at trial tended to show that Dr. Widener did not refer Oberkor to Dr. Rainer. Dr. Widener testified that he merely recommended to Ob-erkor that she receive treatment for her preexisting injury and that he suggested that she receive treatment from Dr. Rainer only in response to Oberkor’s request for the name of an appropriate physician. Therefore, we conclude that the trial court did not err in holding that Home Health was not liable for payment of Dr. Rainer’s medical bills. Ex parte Moncrief, supra.
The trial court’s judgment as to the issue of Home Health’s duty to pay Dr. Rainer’s medical bills is affirmed. That portion of the trial court’s judgment denying workers’ compensation benefits to Oberkor on the basis that Oberkor had a preexisting injury is reversed, and the cause is remanded for the trial court to reconsider its denial of workers’ compensation benefits in light of this court’s conclusion that, as a matter of law, Oberkor did not have a preexisting injury at the time of her 1993 on-the-job accident.
AFFIRMED IN PART; REVERSED IN PART; AND REMANDED.
YATES and MONROE, JJ., concur.
CRAWLEY and THOMPSON, JJ., concur in part and dissent in part.

. Because we conclude that the trial court erred in holding that Oberkor had a preexisting injury, and we are remanding this cause for the trial court to reconsider its denial of workers’ compensation benefits in light of this conclusion, a discussion of Oberkor’s contention that the trial court erred in concluding that she failed to prove medical causation is unnecessary.