MOORE, Judge.
 

 In
 
 Matthew’s Masonry Co. v. Aldridge,
 
 5 So.3d 621 (Ala.Civ.App.2008), this court reversed a judgment entered by the Eto-wah Circuit Court (“the trial court”) and remanded the case for the trial court to enter findings of fact and conclusions of law regarding the effect of a settlement agreement approved by the trial court on
 
 *465
 
 December 22, 2000, on the right of Edward Aldridge, Jr. (“the employee”), to recover medical benefits from Matthew’s Masonry Company (“the employer”) for a right-knee condition. On December 10, 2008, the trial court complied with our mandate by entering a new judgment containing additional findings of fact and conclusions of law. In that judgment, the trial court concluded that the employee had not released his right to medical treatment for the right-knee condition. The employer timely appealed from that judgment on January 20, 2009.
 

 Facts
 

 In November 1998, the employee filed a petition seeking workers’ compensation benefits on account of injuries he had received to his cervical and lumbar spine allegedly resulting from an accident arising out of and in the course of his employment with the employer on June 9, 1998. On December 7,1999, the employee underwent a functional-capacity evaluation (“FCE”) as part of his treatment for the 1998 injuries. On May 5, 2000, the employee moved to amend his complaint to allege that he had injured his left lower extremity during the FCE. Specifically, the employee claimed that, due to weakness in his lower back, he had had to alter his gait and to modify his squat movements and that those modifications had caused him to injure his left lower extremity. The employer filed an objection to the motion to amend on May 16, 2000; the trial court never ruled on the motion to amend or on the objection filed by the employer.
 

 On December 22, 2000, the parties jointly petitioned the trial court to approve a settlement to which they had agreed. In that petition, the parties asserted that the employee had sustained an injury to his back due to a June 9, 1998, accident arising out of and in the course of his employment with the employer. Following a recitation of the benefits that had been paid to the employee on account of that injury, the petition states, in pertinent part:
 

 “The parties have made known to the court that they have reached a compromise settlement agreement, subject to the approval of this Court, for the sum of Eighty Thousand and No/100 ($80,-000.00) Dollars as a full and complete settlement of any and all claims for workmen’s compensation benefits under the Workmen’s Compensation Act of Alabama, or otherwise, including temporary total disability, permanent partial disability benefits and vocational rehabilitation benefits. The [employee’s] rights to future medical benefits for treatment of his back injury are hereby preserved and said benefits shall remain open. As further consideration for this settlement the [employee] waives any claim to future medical treatment for psychiatric disorders and also waives any claim for medical expenses in connection with his left knee and his right knee. The employer is hereby discharged for any further liability for psychiatric medical expenses and medical expenses incurred by the [employee] for treatment of either of his knees.”
 

 The trial court approved the settlement, adopting the petition as the final judgment and ordering the parties to comply with that judgment.
 

 On October 31, 2007, the employee filed a motion to compel the employer to authorize and pay for medical treatment relating to his right knee. The employee alleged that he had developed “problems to his knees, all as a proximate result of the injury to his back,” as confirmed by the records of two authorized treating physicians attached to the motion.
 
 [1]
 
 One doc
 
 *466
 
 tor opined that the right-knee symptoms experienced by the employee “can be, or are, the result of his back problems, which are work related. The altered gait associated with the back can certainly have caused the problem with the [employee’s] knee.” The other doctor essentially deferred to the first doctor’s opinion regarding the etiology of the employee’s right-knee symptoms and noted: “I can state that the low back pain does frequently result in an altered/antalgic gait which would put atypical stresses on the lower extremity joints.” The employee alleged that the employer had refused to pay for the treatment for his right-knee condition despite the terms of the settlement agreement requiring the employer to provide future medical treatment for the employee’s back injury. The employer responded on November 3, 2007, that the employee had waived his claim for medical benefits relating to his knees in the settlement agreement, which agreement had become part of the trial court’s judgment.
 

 On December 14, 2007, the trial court conducted a trial regarding the controversy. At that trial, the employee introduced into evidence correspondence exchanged between the parties’ attorneys in May and June 2000. In that correspondence, the attorney for the employer sought information regarding the injury to the employee’s left lower extremity, as alleged in the amended complaint, and indicated that the employer would not provide medical treatment for that injury until it received sufficient information to change its decision. The attorney for the employee responded by quoting the medical records from five days after the FCE that documented the employee’s complaints of left-leg pain. The attorney for the employee explained that, due to problems with his right leg associated with the 1998 back injury, the employee had relied more heavily on his left leg during the FCE and had hurt it.
 

 The employee testified that, before the settlement, he had experienced problems with his right leg, including his right knee, from sciatica. The employee basically testified that, because of his right-leg problems, he had relied almost exclusively on his left leg to perform squatting and lifting exercises during the FCE. The employee stated that, during those exercises, he had strained his left knee, that he had complained of the left-knee strain, and that those complaints had been documented in the medical records. The employee further testified that, at some point after the settlement, he developed problems with both feet. According to the employee, the authorized treating physicians determined that those problems had resulted directly from an altered gait brought on by the employee’s 1998 back injury. The employer covered the costs of two surgeries to treat the employee’s foot problems.
 

 The trial court entered a judgment on January 11, 2008, finding that the employee had injured his right knee as a direct and natural consequence of his compensa-ble 1998 back injury and ordering the employer to cover the costs of the medical treatment for the right-knee condition.
 
 Aldridge,
 
 5 So.3d at 621. However, because the trial court had not addressed the effect of the 2000 settlement on the employee’s right to receive medical benefits, this court reversed that judgment and remanded the case for the trial court to make additional findings of fact and conclusions of law.
 
 Id.
 

 On remand, the trial court held another hearing at which it heard only additional arguments from counsel. Following those arguments, the trial court entered a new judgment on December 10, 2008, finding
 
 *467
 
 that the 2000 settlement agreement contained a “latent ambiguity” subject to clarification by extrinsic evidence.
 
 See Mass Appraisal Servs., Inc. v. Carmichael,
 
 404 So.2d 666, 672 (Ala.1981). The trial court concluded from the terms of the settlement and the evidence presented at the trial that the parties had intended that the employer would cover all medical expenses relating to conditions directly traceable to the back injury, but that the employer would not cover medical expenses relating to knee conditions caused by the strain or injury the employee had received while undergoing the FCE. Convinced that the 2007 right-knee condition related solely to the back injury and not to the FCE accident, the trial court found the employer liable for the expenses for the treatment of the employee’s right-knee condition.
 

 Issues
 

 On appeal, the employer argues that the employee expressly and unambiguously waived and released any claim for future medical treatment related to his knees in the 2000 settlement agreement. The employer maintains that the trial court erred in finding the settlement agreement to be ambiguous and in failing to enforce its plain language. The employer further argues that, by adopting the terms of the settlement agreement and entering a judgment ordering the parties to comply with that agreement, the trial court effectively adjudicated the issue of the employer’s liability for future medical treatment for the employee’s knees. The employer contends that the doctrines of res judicata, collateral estoppel, and the law of the case preclude the employee from now asserting any right to medical benefits for his right-knee condition.
 

 Standard of Review
 

 This case involves undisputed facts. This court must therefore determine whether the trial court correctly applied the law to those undisputed facts. By statute, this court l'eviews such legal issues without a presumption of correctness.
 
 See
 
 Ala.Code 1975, § 25-5-81(e)(l). This court reviews the application of the law to undisputed facts
 
 de novo. See Wal-Mart Stores, Inc. v. Morgan,
 
 830 So.2d 741, 743 (Ala.Civ.App.2002).
 

 Analysis
 

 In the absence of fraud, a workers’ compensation settlement supported by valuable consideration, unambiguous in meaning, will be given effect according to the intention of the parties judged by the court from what appears within the four corners of the instrument itself, and parol evidence is not admissible to impeach or vary its terms.
 
 See Johnson v. Asphalt Hot Mix, Inc.,
 
 565 So.2d 219, 220 (Ala.1990); and
 
 Finley v. Liberty Mut. Ins. Co.,
 
 456 So.2d 1065, 1067 (Ala.1984). In this case, the clear and unambiguous terms of the settlement agreement indicate that the employee, in exchange for the receipt of $80,000 and the reservation of his right to receive future medical treatment for his back injury, waived
 
 “any
 
 claim for medical expenses in connection with his left knee and his right knee” and discharged the employer from liability for “medical expenses incurred by the [employee] for treatment of either of his knees.” According to the plain language of the settlement agreement, the employee did not retain any right to future medical treatment for knee conditions relating to his back injury.
 

 The Alabama Workers’ Compensation Act (“the Act”), Ala.Code 1975, § 25-5-1 et seq., specifically provides that parties may settle controversies regarding medical payments between themselves.
 
 See
 
 Ala. Code 1975, § 25-5-56. The parties settled the matter of the employee’s entitlement
 
 *468
 
 to future medical benefits for his knees, and the trial court approved that settlement on May 22, 2000, finding that the settlement served the best interests of the employee.
 
 See Shaw v. Dover Furniture Mfg. Co.,
 
 700 So.2d 1382, 1385 (Ala.Civ.App.1997) (generally requiring circuit courts to expressly find that a settlement in a workers’ compensation action is in the best interests of the employee). Nevertheless, the trial court refused to enforce the terms of the settlement agreement based on the existence of what it termed a latent ambiguity.
 

 “ ‘... It is said that “a latent ambiguity arises when the writing on its face appears clear and unambiguous, but there is some collateral matter which makes the meaning uncertain,” 32 C.J.S.,
 
 Evidence,
 
 § 961b, p. 915; “that is, an uncertainty which does not appear on the face of the instrument, but which is shown to exist for the first time by matter outside the writing,” 20 Am. Jur.,
 
 Evidence,
 
 § 1157, p. 1010. And it is well established that parol or other extrinsic evidence is admissible to explain or clarify a latent ambiguity.’ ”
 

 Mass Appraisal Servs., Inc. v. Carmichael,
 
 404 So.2d at 672 (quoting
 
 Gibson v. Anderson,
 
 265 Ala. 553, 555, 92 So.2d 692, 694 (1957)). Evidently, the trial court determined that factors extrinsic to the settlement agreement made uncertain the meaning of its otherwise clear and unambiguous terms. We disagree.
 

 Whether a settlement agreement is ambiguous is a question of law for the trial court.
 
 Springer v. Damrich,
 
 993 So.2d 481, 488 (Ala.Civ.App.2008).
 
 See also R.G. v. G.G.,
 
 771 So.2d 490, 494 (Ala.Civ.App.2000). The extrinsic evidence introduced by the employee only reinforces the meaning of the settlement agreement. It does not render it unclear or ambiguous.
 

 The employee testified that before the parties entered into the settlement agreement he had been experiencing right-knee and left-knee pain. He attributed his right-knee pain solely to sciatica and to his altered gait from his back injury. In his amended complaint filed in May 2000, and in the letter his attorney sent to the attorney for the employer in June 2000, the employee attributed his left-knee pain to his having overcompensated with his left lower extremity during the FCE because of weakness and other symptoms in his right leg caused by his back injury. In other words, by June 2000, the employee had clearly notified the employer that he claimed both his right-knee problem and his left-knee problem to be direct and natural consequences of his 1998 back injury.
 
 See Ex parte Pike County Comm’n,
 
 740 So.2d 1080, 1084 (Ala.1999) (quoting 1 Arthur Larson & Lex K Larson,
 
 Larson’s Workers’ Compensation Law
 
 § 13.00 (1998)) (“When determining whether a successive injury is compensable, the general rule is that ‘[wjhen the primary injury is shown to have arisen out of and in the course of employment, every natural consequence that flows from the injury likewise arises out of the employment, unless it is the result of an independent intervening cause attributable to [the] claimant’s own intentional conduct.’ ”).
 

 In waiving his right to medical benefits for his knees, the employee obviously understood that he was waiving a claim for injuries he believed and maintained were compensable solely because of their relationship to his back injury. It is apparent from the terms of the settlement agreement that the parties intended that the employee would not receive medical treatment for his knees regardless of any connection to the back injury. In 2007, the employee raised exactly the same contention as he did in 2000, by asserting that his 1998 back injury had caused him to alter
 
 *469
 
 his gait resulting in an injury to his right knee. As both the explicit terms of the settlement agreement and the extrinsic evidence prove, that claim had already been resolved by settlement in 2000.
 

 The fact that the parties interpreted the settlement agreement as requiring the employer to cover the foot surgeries does not affect our holding. The settlement agreement specifically addresses coverage of any knee problems by declaring that the employer shall have no liability for any benefits relating to the employee’s knees. The settlement agreement does not specifically address any other part of the body injured as a direct and natural consequence of the employee’s 1998 back injury. Other parts of the body, such as the feet, fall within the general terms of the settlement agreement, which require the employer to keep open medical benefits for conditions relating to the employee’s 1998 back injury. By paying for the foot surgeries, the employer merely complied with the general provision, but by doing so it did not violate, or even call into question the meaning of, the specific waiver relating to the knees.
 
 See, generally, Ward v. Check Into Cash of Alabama, LLC,
 
 981 So.2d 434, 438 (Ala.Civ.App.2007) (holding that, when interpreting contracts, a specific provision prevails over a general provision relating to the same subject matter).
 

 The trial court concluded that the parties had intended only that the employee waived claims relating to treatment for the injuries he had received in the FCE accident. The employee testified that he had injured only his left knee in that accident. Yet the settlement agreement specifies that the employee waived his claim for medical benefits for his right knee as well. The inclusion of the right knee in the waiver provision belies any contention that the parties intended to limit the waiver solely to injuries the employee received in the FCE accident just as clearly as the failure of the parties to use any limiting language to that effect. Had the parties intended that the waiver would apply only to injuries received in the FCE accident, the settlement agreement would read much differently. As written, the document does not mention the FCE accident and it certainly does not limit the waiver to injuries caused by that accident. A court cannot refine away the terms of a contract that are expressed with sufficient clarity to convey the intent and meaning of the parties.
 
 See Kinnon v. Universal Underwriters Ins. Co.,
 
 418 So.2d 887, 888 (Ala.1982). A court cannot, in the guise of contract construction, create a new contract for the parties by ignoring the express provisions of the original contract.
 
 See Gardner v. Cumis Ins. Soc’y, Inc.,
 
 582 So.2d 1094, 1095-1096 (Ala.1991).
 

 None of the extrinsic facts considered by the trial court make the meaning of the settlement agreement uncertain. To the contrary, those facts do not reveal a latent ambiguity, but, instead, only more fully explicate the terms of the settlement agreement. Based both on the unambiguous terms of the settlement agreement and the extrinsic facts in evidence, the parties plainly intended that, in exchange for the receipt of $80,000 and the retention of his right to future medical benefits relating to the back injury, the employee would, among other things, specifically waive his right to future medical benefits connected to treatment of his knees. The treatment the employee sought in 2007 clearly is “connected” to his right knee as that term is ordinarily understood.
 
 [2]
 

 See Ex parte Dan Tucker Auto Sales, Inc.,
 
 718 So.2d 33, 36 (Ala.1998) (“Words used in a contract
 
 *470
 
 will be given their ordinary, plain, or natural meaning where nothing appears to show they were used in a different sense or that they have a technical meaning”)-
 
 [3]
 
 The settlement agreement clearly and unambiguously absolves the employer of any liability for medical expenses relating to that treatment. Therefore, the trial court erred in ordering the employer to cover those expenses.
 

 For the foregoing reasons, the judgment of the trial court is reversed and the case is remanded for further proceedings consistent with this opinion. Based on our disposition, we pretermit any discussion of the remainder of the arguments raised by the employer.
 

 REVERSED AND REMANDED.
 

 THOMPSON, P.J., and PITTMAN, BRYAN, and THOMAS, JJ., concur.
 

 [1]
 

 . Although the employee claimed injuries to both knees, the medical records refer to only
 
 *466
 
 the right knee.
 

 [2]
 

 . “Connected” is defined as “related: having something in common.” On the date this opinion was released, this definition could be found at
 
 http:llencarla.msn.com/dwlionmyJ
 
 
 *470
 

 connected.html
 
 (as visited on June 5, 2009; a copy of the Web page containing this definition is available in the case file of the clerk of the Alabama Court of Civil Appeals).
 

 [3]
 

 . The employee argues that this court should liberally construe the settlement agreement against the employer in order to preserve the employee’s right to medical benefits. However, the employee does not cite any cases in which the court applied the liberal-construction rule to a settlement agreement.
 
 See
 
 Rule 28(a)(10), Ala. R.App. P. The lone case cited by the employee notes that the
 
 Act
 
 should be liberally construed to accomplish its beneficent purpose.
 
 See Oberkor v. Central Alabama Home Health Care Servs., Inc.,
 
 716 So.2d 1267, 1270 (Ala.Civ.App.1998). In the present case, we are not asked to construe any provision of the Act itself, to which the liberal-construction rule would apply,
 
 see
 
 Ala. Acts 1992, Act No. 92-537, § 1. Hence, the liberal-construction rule does not apply to this case.